## Muhr's Estate.

*Husband and wife—Agreement of separation—Weekly allowance— Subsequent divorce of wife.*

An agreement between husband and wife which provides for their living separate and apart, and for the payment of a certain amount per week to the wife in lieu of all claims and demands which she may have against her husband, may be made without the intervention of a trustee when the parties are living together, if a separation is inevitable and immediate; and such agreement is not terminated by a subsequent decree of divorce against the wife for her adultery. The act of March 13, 1815, sec. 8, does not divest the rights of the wife under such an agreement by her subsequent divorce.

Argued Oct. 20, 1914. Appeal, No. 92, Oct. T., 1914, by Charles L. Wahler, from decree of O. C. Phila. Co., Jan. T., 1896, No. 271, dismissing exceptions to adjudication in Estate of Simon Muhr, deceased. Before RICE, P. J., ORLADY, HEAD, KEPHART and TREXLER, JJ. Affirmed.

Exceptions to adjudication.

At the audit Ida Wahler presented a claim for $3.00 per week from June 3, 1913, out of an annuity of $200 per year payable under testator's will to Charles I. Wahler, her former husband. The evidence showed that on June 29, 1908, Charles I. Wahler and Ida Wahler, his wife, entered into a written agreement under seal without the intervention of a trustee, by which they agreed to live separate and apart from each other, and

by which Wahler agreed to pay his wife $3.00 per week "in lieu of all claim and demand of whatsoever kind, character and nature that the said Ida Wahler may or might have against her said husband, Charles I. Wahler." To secure the payment of this allowance Charles I. Wahler assigned to Ida Wahler as collateral security, a legacy of $200 per annum payable to him under the terms of the will of Simon Muhr. The parties separated ten days after the agreement was executed, and there was no evidence of a subsequent reconciliation. On September 13, 1913, Wahler secured a divorce from his wife on the ground of adultery. The auditing judge, ANDERSON, J., allowed the claim.

Exceptions to the adjudication were dismissed by the court.

*Error assigned* was decree of the court.

*Alex. Simpson, Jr.*, with him *Jules E. Pereyra*, for appellant.—The decree in divorce terminated the agreement: Blaker v. Cooper, 7 S. & R. 500; McGrath v. Penna. Co., 8 Phila. 113.

Appellee is concluded by the decree in the divorce proceedings: Schwan v. Kelly, 173 Pa. 65; Long v. Lebanon National Bank, 211 Pa. 165; People's Trust Co. v. Ehrhart, 56 Pa. Superior Ct. 101.

This agreement being between husband and wife, without the intervention of a trustee, is enforceable only in so far as it is decided equitable and just to enforce it: Hutton v. Hutton, 3 Pa. 100; Worrall v. Jacob, 3 Mer. 265; Compton v. Collison, 2 Brown Ch. Rep. 298; Halstead v. Halstead, 74 N. J. Eq. 596.

The agreement is void because the parties were living together at the time it was made: Poillon v. Poillon, 49 App. Div. (N. Y.) 341.

*Claude L. Roth*, for appellee.—The agreement of separation is valid and enforceable at law: Jee v. Thur-

low, 2 Barn. & Cress. 547; Buttlar v. Buttlar, 57 N. J. Eq. 645; Charraud v. Charraud, 1 N. Y. Leg. Obs. 134.

The parties intended the agreement and assignment to be operative during their joint lives: Galusha v. Galusha, 116 N. Y. 635; Carpenter v. Osborn, 102 N. Y. 552; Clark v. Fosdick, 118 N. Y. 7.

The agreement of separation was not terminated by the decree in divorce: Buttlar v. Buttlar, 67 N. J. Eq. 136; Charlesworth v. Holt, L. R. 1873, 9 Exch. 38; Blaker v. Cooper, 7 S. & R. 500; Elmendorf v. Whitney, 153 Pa. 460; Galusha v. Galusha, 116 N. Y. 635.

The agreement of separation having been fully performed on the part of the appellee, she is entitled to all the benefits thereof to her, notwithstanding her alleged adultery: Dixon v. Dixon, 24 N. J. Eq. 133; Sweet v. Sweet, 1 Q. B. 12; 64 L. J. Q. B. 108; Field v. Sayres, 1 New Rep. 121; Sydney v. Sydney, 2 P. Wms. 264; Jee v. Thurlow, 2 Barn. & Cress. 547.

OPINION BY TREXLER, J., April 19, 1915:

The agreement between the parties, after reciting that unhappy differences had arisen between them, provides for their living separate and apart, and for the payment of $3.00 per week to the wife in lieu of all claims and demands which she may have against her husband; the separation to continue during their respective lives. To secure the payment of the weekly sum, the husband assigned as collateral security a legacy due him in the estate of Simon Muhr, deceased, and the wife's claim as assignee of the legacy, brings the question as to the scope of the agreement before us. Her claim is resisted, the reason alleged being that subsequent to the separation, the husband procured an absolute divorce from her on the ground of her adultery. Did the decree of divorce terminate the agreement? The rule appears to be well established that "the law will not imply a termination of covenants relating to property or making provision for the wife, from the misconduct of the party

benefited, a decree dissolving the marriage or judicially separating the parties for such misconduct, or any other like matter; but they will be avoided or extinguished only by reconciliation, the happening of contingencies which the deed expressly provides shall have that effect, or by subsequent agreement: 25 Am. & Eng. Ency. of Law (2d ed.), page 473. The subsequent adultery of the wife will not, in the absence of a stipulation to the contrary, cause the setting aside of a valid deed of settlement: 21 Cyc. 1597. In both of the above publications a large number of cases are cited in support of the text.

Our attention has been called to two Pennsylvania cases: Blaker v. Cooper, 7 S. & R. 500, and McGrath v. Penna. Co. for Ins. on Lives, etc., 8 Phila. 113. In the former case, which involved the construction of an agreement of separation, TILGHMAN, C. J., states, "the parties may make what agreement they please and the only question is, what is the agreement. He (the husband) was to be indemnified from any further expense and from any claim of dower—so that the husband received a quid pro quo. He retains all the benefit of the agreement, notwithstanding the subsequent divorce and marriage of his wife." There is no doubt that a man may agree to pay an annuity to his wife during her life whether she remains his wife or obtains a divorce and marries again. In McGrath v. Penna. Co., supra, in an opinion by THOMPSON, C. J., this appears, "But it is argued by the solicitor of the company, that possibly, the divorce and marriage of Mrs. Cooper, has a bearing on the duration, or rather continuity of this settlement. As already said, no such limitation or condition appears in the instrument, and as there was a sufficient consideration for the settlement when made, we see nothing that in the least affects its bearing force. This principle is clearly asserted in Hill on Trustees, p. 428. The text is, that 'where the wife is entitled to a provision by virtue of a contract, whether contained in marriage articles or in a covenant or deed of settlement, it is

clearly settled that the trust may be enforced in her favor, notwithstanding her adultery, and although she may be living apart from her husband. And a suit by the trustees against the husband for that purpose may be sustained.' Numerous English decisions are cited by the learned author in support of the text."

The appellant, however, calls attention to the words employed by Justice TILGHMAN in Blaker v. Cooper above referred to, "It does not appear on the record, at whose instance this divorce was obtained, nor what was the cause of it. It may be, that it was caused by the husband's misconduct, and if so, it would be a bad reason for getting rid of the annuity. I will not presume that it was occasioned by the misconduct of the wife, because it is not shown." We do not think these words were employed to make an exception to the general rule. They may be regarded as merely fortifying the conclusion reached. It was a mere statement that facts that might be pressed in argument for the avoidance of such an agreement were not present in that case. The decision was founded upon the construction of the contract. The expression above quoted was a mere dictum.

Whatever hardship there may seem to be in holding the husband to the contract after a divorce obtained by reason of the adultery of the wife, the fact nevertheless remains that if he desired to make the chastity of his wife a condition to the continuance of the agreement he might, as is said in some of the cases, have inserted a dum casta clause. We are not called upon to change the contract of the parties where they make agreements which are for a valuable consideration, with a full understanding of the subject-matter, however circumstances may change or conditions vary. The wife when she agreed to separate from her husband gave up her rights as to maintenance and any share of his estate (Scott's Est. (No. 2), 147 Pa. 102) for which the husband in the agreement compensated her. He re-

tains all the benefit of the agreement. Her subsequent adultery does not affect him in any of those rights which she agreed to leave to him without molestation. It may seem unjust to require him to pay to her support after the marriage tie has been broken, but the agreement of separation was not for the preservation of the marriage relation but its very purpose was the getting rid of certain incidents of matrimony. Her adultery in no way diminished the benefits he obtained by reason of the agreement. We feel that the decision of the lower court in sustaining the agreement was amply supported by authority.

The argument advanced that under the decree obtained in the divorce case, in the language of the act of March 13, 1815, sec. 8, "all the duties, rights and claims accruing to either of said parties in pursuance of said marriage shall cease and determine;" and that therefore the agreement of separation is no longer binding upon the parties, is not tenable. The act of assembly refers to such duties as are put upon the parties by reason of the marriage relation, not by reason of an agreement made by them. If in a deed of settlement the husband had conveyed land to his wife and afterwards they would have become divorced, it certainly could not be argued that he would be entitled to a reconveyance of the land to him. Neither does the act divest rights obtained by her under an agreement of separation.

The only other matter we need consider is the question as to whether the agreement was valid without the intervention of a trustee and because the parties were living together at the time it was made. It was stated in Rodenbaugh v. Rodenbaugh, 17 Pa. Superior Ct. 619, that a husband and wife may make a valid agreement for separation without the intervention of a trustee where the separation is inevitable and immediate and that a wife's rights under such contract may be enforced in her own name. There is no doubt in this

case that the separation was inevitable; that the agreement was not made in contemplation of a possible future separation.  Her withdrawal from his home did not immediately follow the agreement in the strict sense of the word.  Ten days intervened according to her testimony from the time the contract was made until she actually left, but there is no evidence that reconciliation took place or that the determination to separate was at all affected by the delay.  The object of the agreement was actually carried into effect by both parties in good faith and acquiesced in until the divorce obtained by him.

All the assignments of error are overruled and the judgment of the court is affirmed.