Commonwealth of Pennsylvania ex rel. *v.* Peterson et al., Appellants.

Argued October 6, 1930.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM, BALDRIGE and WHITMORE, JJ.

*George H. Detweiler,* for appellant.

*Franklin E. Barr,* Assistant District Attorney, and with him *John Monaghan,* District Attorney, for appellee.

OPINION BY CUNNINGHAM, J., December 12, 1930:

William E. Peterson, one of the appellants, was injured in the course of his employment with Manhattan Fire Proofing Company and became entitled to receive from Employers Liability Assurance Corporation, Ltd., the other appellant and the insurance carrier for his employer, weekly compensation payments of $14 each. Peterson had deserted and failed to provide for his wife and two minor children and a support order had been entered against him in the court below. At the instance of the Department of Public Health and Charities of the City of Philadelphia, and in accordance with the procedure provided by Section 6 of the Act of 1812, 5 Sm. Laws 392, and Section 29 of the Act

of 1836, P. L. 541, 547, a warrant of seizure was issued with notice to the insurance carrier as garnishee. Its answer admitted that at the time of the service of the warrant there was in its hands $14 payable to Peterson under the provisions of our Workmen's Compensation Law. The garnishee then averred that it is the intent of the compensation law that awards under it "shall be personal payments, and can only be paid to others than the person entitled thereto under orders of the Workmen's Compensation Bureau" and, if payment should be made without first having determined at law the rights and duties of all the parties, it is possible that Peterson might be able to compel payment to him of all his compensation. The court below made an order confirming the warrant of seizure and directing the insurance carrier "to pay to the clerk of the municipal court......the sum of seven dollars a week for the wife and children of William E. Peterson," from which order we have this appeal by him and the garnishee.

In support of their contention appellants cite Section 318 of the Workmen's Compensation Act of 1915, P. L. 736, 749, giving compensation payments the same preference as is now or may hereafter be allowed by law to claims "for unpaid wages for labor." The section further provides that claims for payments due under the act "shall not be assignable" and, with an exception not here involved, "shall be exempt from all claims of creditors, and from levy, execution, or attachment, which exemption may not be waived." Counsel for appellants unduly stresses in his argument the words "levy, execution, or attachment," and thus quotes what he conceives to be the material words of this portion of the section— "exempt from ...... levy, execution, or attachment." This suggestion overlooks the fact that the main proposition is exemption "from all claims of creditors."

Manifestly, the important thing the legislature had in view was to exempt these awards from the "claims" of creditors, the exemption from the various methods of legal procedure and the operation of the writs by which such claims are enforced being merely incidental. If the claim made against the employe in this case in behalf of his wife and children is in a legal sense the "claim of a creditor," no part of any compensation payments due him may be seized under any form of legal process. But established principles demonstrate that the relationship and obligation of a man to his wife and children is not that of a debtor to his creditors. The question was fully considered and determined in Moorehead's Estate, 289 Pa. 542, 552, a case in which the question involved was whether a deserted wife could compel the trustees of a spendthrift trust, created for the benefit of her husband, to contribute to her support. Material terms of the trust were "that neither the income ...... nor the corpus from which the same is derived [should] be liable to or for the contracts or debts of [the husband], or to execution or to attachments at the suit of any of his creditors." In affirming the decree of the court below, directing the trustees to pay out of the income in their hands a sum sufficient for the support and maintenance of the beneficiary's wife, our Supreme Court said:

"In every civilized country is recognized the obligation, sacred as well as lawful, of a husband to protect and provide for his family," and, after referring to the interest of the state in maintaining the institution of marriage in purity and integrity, continued: "There is still another great factor to be considered in this case, the legal unity of husband and wife, and it is a unity which must continue to be recognized, however much modern laws enlarge the separate rights and privileges of each. And with

this merger of existence and interests, established from the most ancient times in all civilized lands, how can it be claimed that the status of creditor and debtor is established between them, when it is a question of the mutual performance and fulfillment of fundamental duties as husband and wife, which the obligations of humanity impose and the safety of society requires from both? 'The marriage contract has not the elements of ordinary contractual relations. That contract is a life contract, imposing upon the husband the support and maintenance of the wife in sickness and in health during life, contingent only on the termination by decree of court for statutory reasons;' Keezer on Marriage, section 55; 'The duty of the husband to support the wife is not dependent upon contract': 30 C. J. 517. These are accordingly primal obligations under the marriage relation imposed immemorially upon the husband, and which do not fall within the range of the nature or the meaning of a debt. Every debt of course is an obligation; but every obligation is not a debt: Sonnesyn v. Aiken, 97 N. W. 557.''

An award of compensation to an injured employe is neither a penalty against the employer nor a charity to the employe; it is intended to secure compensation to the workman for the perils of his employment and in one view of the matter his right to the statutory compensation is a part of his compensation for services rendered. Such awards may properly be considered at least as analogous to, if not in lieu of, the wages which the employe would have earned if the injury had not been suffered. It is therefore not unreasonable to conclude that the legislature intended, by the section under consideration, to place such awards upon a parity with wages for labor in so far as claims of creditors of the employe may be concerned. The public policy support-

ing our legislative exemption of wages from execution is to secure to the workman and his family the fruits of his labor, in order that they may go to supply their wants. The families of wage earners are as truly beneficiaries of this policy as are the laborers themselves: Smith v. Brooke, 49 Pa. 147; Firmstone v. Mack, ibid. 387.

We are of opinion that the claim which the representatives of the Commonwealth seek to enforce in this case against the award of compensation to Peterson is not the claim of a creditor and that the award is, therefore, not exempt from seizure, in the method prescribed by law, of such portion thereof as has been judicially decreed to be applied to the support of his wife and children.

The final order, above quoted, should, however, be modified by adding thereto the words, "during such period as he may be entitled to receive compensation under the existing award." As so modified the order is affirmed.