## Cavazza Estate.

Argued April 11, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*John A. Metz, Jr.,* with him *John A. Metz* and *Metz & Metz,* for appellants.

*S. V. Albo,* for appellee.

OPINION BY ARNOLD, J., July 19, 1951:

Residuary legatees severally appeal from a decree of the orphans' court which allowed a claim to the former wife of the decedent under an antenuptial agreement. Claimant, Louisa Comis, and decedent were married two days after the written contract, and seven years later he procured a divorce from her on the grounds of indignities, which on appeal was affirmed: *Cavazza v. Cavazza,* 102 Pa. Superior Ct. 312, 156 A. 629.

The antenuptial agreement was under seal and entirely silent concerning the rights of either party in the event of a divorce. The preamble recited the contemplated marriage, and the ownership of real and personal property by the respective parties. It provided that after marriage the property of each should be free of all claims, by inheritance or otherwise, and such claims were released. It was then covenanted: "[Louisa Comis releases any claim in her husband's estate] except that the said Humbert Cavazza, in consideration of the premises, . . . does hereby agree upon his death that the said Louisa Comis shall receive from his estate the sum of Three Thousand ($3,000.00) Dollars, and he hereby orders and directs the executor or administrator of his said estate to pay to the said Louisa Comis the said sum . . . , which he hereby acknowledges to be a valid, proper and legal claim against his said estate in favor of the said Louisa Comis. . ." The instant claim was under this clause.

It is contended by the appellants that the agreement having been entered into in contemplation of marriage, and the claimant having wilfully destroyed the status of marriage, the agreement granting her any part of her husband's estate must fail.

In the absence of fraud or concealment, antenuptial agreements are valid and enforcible, and it seems to us that the only question in this case is construction of the written contract. If the husband failed to insert clauses to protect his estate in the event of his wife being the guilty party in a divorce action, the courts cannot rewrite the contract for his benefit. The contract here was free from all ambiguities. Such cannot be created in order to construe the contract differently from its plain words. The agreement was absolute and provided that Louisa Comis should receive $3,000 upon the death of Cavazza.

248

Cases are cited in which courts of other jurisdictions have indulged in the speculation that one of the considerations for such agreements is that the wife shall not destroy the marriage relation. This is fallacious. In our view there is no room for speculation where, as here, the contract is unambiguous. See *John Seuss et al. v. Otto Schukat* (Ill.), 192 N.E. 568, 95 A.L.R. 1461, and *Clarence L. Crise et al. v. Samuel K. Smith et al., Trustees* (Md.), 133 A. 110, 47 A.L.R. 467.

We are of the opinion that since the antenuptial contract was valid in its inception and was not fraudulently induced in contemplation of marital misconduct, it is not abrogated by a divorce of the parties for conduct arising after marriage, unless the language of the instrument contains an express stipulation to such effect.[1]

Decree affirmed, costs to be paid by appellants.

---

[1] The same rule is applied to postnuptial agreements: *Muhr's Estate*, 59 Pa. Superior Ct. 393.