500 A.2d 837

**Mary C. HOLLMAN**

**v.**

**Wade Power HOLLMAN, Appellant.**

**Mary C. HOLLMAN, Appellant**

**v.**

**Wade Power HOLLMAN, United States Steel and Carnegie Pension Fund.**

Superior Court of Pennsylvania.

Argued March 12, 1984.

Filed Nov. 1, 1985.

292

John M.R. Ayres, Johnstown, for appellant in No. 1 and appellee in No. 707.

Samuel J. Reich, Pittsburgh, for appellant in No. 707 and appellee in No. 1.

Before SPAETH, President Judge, and CAVANAUGH, BROSKY, ROWLEY, McEWEN, TAMILIA and JOHNSON, JJ.

TAMILIA, Judge:

This is a consolidated appeal from two orders issued in a dispute over the enforcement of a support agreement. The first order was in favor of the former wife, Mary C. Hollman (hereinafter "Mary"), holding that the pension funds of the former husband, Wade Power Hollman (hereinafter "Wade"), could be attached to enforce the support agreement. The second order was in Wade's favor, holding

that this Court's decision in *Schmitz v. Schmitz*, 305 Pa.Super. 328, 451 A.2d 555 (1982) forbids such attachment of pension funds since the parties were no longer married. We find that *Schmitz* governs the case before us and accordingly, we vacate the first order and affirm the second.

## Factual and Procedural History

Mary and Wade entered into a support agreement on March 3, 1969, which provided that Wade was to pay Mary the fixed sum of $300.00 monthly. The parties became divorced shortly thereafter in May of 1969. Wade made these payments consistently until November of 1978, at which time they ceased. A default judgment was then entered against Wade for the missed payments in the amount of $1,800. Consequently, a writ of execution was issued and served on U.S. Steel and Carnegie Pension Funds to attach the pension benefits in the amount of $1,661.69 per month being received by Wade. However, Wade claimed an exemption from attachment on the basis that the court was unable to enforce a support agreement as opposed to a court-imposed support order. The court below dismissed this claim for an exemption from attachment on June 4, 1981.[1] Wade appealed from this order.

Subsequently, the payments still not made, Mary brought a second action in equity to enforce the separation agreement. On February 23, 1982, the court below entered an order directing Wade to make the monthly payments to Mary pursuant to the support agreement. The court also directed that judgment be entered on the arrearages that had accrued since the first action. A second attachment was then made against Wade's pension benefits. At this point, the trustees of the pension plan, as garnishee, questioned the attachability of the pension funds.

1. *Hollman v. Hollman*, 130 P.L.J. 63 (C.P. Allegheny 1981) (Opinion by Wekselman, J.).

Acting in a two-judge *en banc* panel,[2] the court below, on December 22, 1982, ordered the dismissal with prejudice of the judgment of garnishment of the pension funds. As noted above, this decision was based on *Schmitz, supra.* Appeal was taken from this order by Mary.

## Analysis

The issue before us is: Whether pension payments of a former spouse can be attached to satisfy a judgment entered against him for arrearages in payments due to his former wife under a support agreement?

■ We begin our analysis by noting that 42 Pa.C.S.A. § 8124(b) sets forth:

**(b) Retirement funds and accounts.—**

(1) Except as provided in paragraph (2), the following money or other property of the judgment debtor shall be exempt from attachment or execution on a judgment:

. . . . .

(vii) Any pension or annuity, whether by way of a gratuity or otherwise, granted or paid by any private corporation or employer to a retired employee under a plan or contract which provides that the pension or annuity shall not be assignable.

Applying this language to the facts before us, there is no denying that the pension fund here involved is not assignable and, therefore, appears to be exempt from attachment or execution.

As noted above, the *en banc* court below relied on *Schmitz* in support of its order dismissing the judgment of garnishment of the pension funds. The *Schmitz* case involved the attempted garnishment of the cash surrender

---

**2.** This panel consisted of two different judges than the one who had entered the final order in the first action. It is to be noted that the initial writ of execution was issued by a judge of the Civil Division of the Allegheny County Court of Common Pleas, whereas the two judges on the en banc panel, which dismissed judgment of garnishment of the pension fund, were assigned to the Family Division of the lower court. The first action had been filed in the Civil Division, the second in the Family Division.

value of life insurance policies to satisfy arrearages in payments owed under a support agreement. The facts in *Schmitz* vary from those before us in only one particular. *Schmitz* involved 42 Pa.C.S.A. § 8124(c)—the insurance exemption—and not, as here, 42 Pa.C.S.A. § 8124(b)(1)(vii)—the pension exemption. This sole difference in no way renders the holding of *Schmitz* inapplicable to the case before us.

The *Schmitz* Court went on to state that since the parties were divorced, the ex-wife was a creditor and no marital support exception to the exemption was applicable:

> In the instant case we do not believe the *Commonwealth v. Berfield*, 160 Pa.Super. 438, 51 A.2d 523 (1947) language is controlling. It must be emphasized that the parties were divorced. There is no longer a legal unity of husband and wife. The obligation here is imposed more so in contract than as an incident arising from the marital status. An absolute decree of divorce terminates the duty of a spouse to support his or her former spouse. *Watson v. Watson*, 243 Pa.Super. 23, 364 A.2d 431 (1976). Although a separation agreement providing support for a spouse will continue subsequent to a divorce, the obligation is based on a contract. *See Cavazza Estate*, 169 Pa.Super. 246, 82 A.2d 331 (1951). The legal relationship of marriage has been severed.
>
> Therefore, we find that the Schmitz' divorce precludes us from applying policy relevant to the marital status. Appellee must be considered a judgment creditor and thus, under Pennsylvania law, her garnishment of the cash surrender value of the two life insurance policies cannot be allowed.

*Id.* 305 Pa.Super. at 332, 451 A.2d at 557.

The holding of *Schmitz* is clear. Once a couple is divorced, the exception for support to the statutory exemption from attachment no longer applies. From *Schmitz* it would follow, therefore, that since Wade and Mary were divorced at all times during which support payments were not made,

the exemption from attachment in 42 Pa.C.S.A. § 8124(b)(1)(vii) is in force here.

■ We must not overlook the fundamental legal dichotomy between a private support agreement entered into voluntarily by the parties and a support order entered by a court of competent jurisdiction. Each of the above-mentioned legal entities affords a distinct right which is enforceable differently from the other. That being so, a private support agreement is no different from any other contract. *Brown v. Hall,* 495 Pa. 635, 435 A.2d 859 (1981); *Guerin v. Guerin,* 296 Pa.Super. 400, 442 A.2d 1112 (1982); *Commonwealth ex rel. Durso v. Durso,* 292 Pa.Super. 94, 99, 436 A.2d 1021, 1024 (1981) (Concurring Statement by Spaeth, J., joined by Cavanaugh, J.); *Commonwealth ex rel. Jones v. Jones,* 216 Pa.Super. 1, 260 A.2d 809 (1969); *Cavazza's Estate,* 169 Pa.Super. 246, 82 A.2d 331 (1951).[3] Consequently, the proper procedure to enforce the husband's failure to comply with his obligations under a support agreement is an action in assumpsit. *Exner v. Exner,* 268 Pa.Super. 253, 407 A.2d 1342 (1979); *Commonwealth ex rel. Jones v. Jones, supra.*

■ In *Jones,* the facts are identical to those in the present case. The ex-wife attempted to garnish wages of

**3.** The proposition that a separation and/or support agreement is a contract has been universally followed. *See, e.g., Roosevelt v. Roosevelt,* 117 Cal.App.3d. 397, 172 Cal.Rptr. 641 (1981); *Benson v. Benson,* 369 So.2d 99 (Fla.Dist.Ct.App.1979); *Humphrey v. Humphrey,* 597 S.W.2d 673 (Mo.App.1980); *Hastings v. Hastings,* 114 N.H. 778, 328 A.2d 782 (1974); *Gramet v. New York State Teachers' Retirement System,* 102 Misc.2d 731, 424 N.Y.S.2d 598 (1979) (former wife could not enforce judgment for arrearages due under separation agreement against husband's exempt pension fund since judgment was not based upon divorce decree but rather upon contract action); *Stone v. Stone,* 78 Misc.2d 788, 358 N.Y.S.2d 641 (1974); *Pope v. Pope,* 38 N.C.App. 328, 248 S.E.2d 260 (1978); *Greiner v. Greiner,* 61 Ohio App.2d 88, 399 N.E.2d 571 (1979); *Zwerling v. Zwerling,* 273 S.C. 292, 255 S.E.2d 850 (1979); *Bragdon v. Bragdon,* 594 S.W.2d 561 (Tex.Civ.App.1980). *See also, Barno v. Farruggia,* 6 Pa. D. & C.3d 727 (1976) (Opinion by Brosky, J.), which held that the Act of May 10, 1921, P.L. 434, § 1, 48 P.S. § 136, relating to attachment and support proceedings is applicable only to parties who are married and inapplicable to parties who have been divorced.

the former husband pursuant to the separation agreement. This Court reversed on the legal theory that legislation to enforce support orders is not applicable to agreements. Here, the parties, in contemplation of divorce, chose to enter into a contract regarding the wife's future support and the courts of this Commonwealth cannot abrogate the intent of the parties and reclassify the contract to give it the effect of a judicial order. *Steuart v. McChesney,* 498 Pa. 45, 444 A.2d 659 (1982); *Litwack v. Litwack,* 289 Pa.Super. 405, 433 A.2d 514 (1981).

■ While the Divorce Code of 1980, 23 P.S. § 101 et seq., has expanded the obligation of support to support agreements included in post-divorce "spousal support" or "alimony" and additionally recognizes and encourages private alimony agreements, that is not to mean the distinction between these entities has been eliminated. To equate a private support agreement with alimony is a misconstruction of the term "alimony" which is by definition: "An order for support granted by this or any other state to a spouse or former spouse *in conjunction with a decree granting a divorce or annulment."* 23 P.S. § 104 (emphasis added). Even though alimony may arise through agreements, which are encouraged, it does not become "alimony" unless incorporated in a divorce decree or alimony order. 23 P.S. § 501(a) and 501(f).

Section 501(f) of the Divorce Code provides:

Whenever the court shall approve an agreement [of support] for the payment of alimony voluntarily entered into between the parties, *such agreement shall be deemed the order of the court* and may be enforced as provided in section 503 [enter judgment on arrears, taking property, attach wages, award interest, require surety for future payment, attachment and incarceration] (emphasis added).

■ It is the latter provision which distinguishes a support order or alimony order (which is simply another species of a support order) from a separation agreement or unincorporated voluntary alimony agreement. The Divorce Code simply extended the duty of support, enforceable by court

order, beyond the divorce, so long as the duty was preserved by court order prior to the divorce. *Commonwealth ex rel. Cook v. Cook*, 303 Pa.Super. 61, 449 A.2d 577 (1982). Also, the fact that the agreement here was created long before the Divorce Code of 1980, causes the Code to be inapplicable in this case. *See Young v. Young*, 507 Pa. 40, 488 A.2d 264 (1985). The distinction is further sharpened by the finding in *Millstein v. Millstein*, 311 Pa.Super. 495, 457 A.2d 1291 (1983), which held that a support order does not merge into a separation agreement; each has its own attributes of enforceability. Without the special legislative provision for post divorce alimony, a duty of support arises out of the marital obligation and ends with the termination of marriage. *Remick v. Remick*, 310 Pa.Super. 23, 456 A.2d 163 (1983).

## A.—*Support Orders*

A support or alimony order is a creation of statute and an incident of the marriage which is enforceable by operation of law. *Commonwealth ex rel. Smith v. Smith*, 260 Pa.Super. 203, 393 A.2d 1224 (1978). Proceedings relative to such orders contain due process requirements, evidentiary findings and involve scrutiny by the court as to their validity, subject to appellate review. In return for this closely proscribed legal proceeding with its attendant safeguards and judicial findings, the legislature has extended the powers to bring about compliance by granting courts the right to attach property and wages and to incarcerate willfully delinquent obligors. A further extension of this power is the right to modify the order or vacate the arrears upon a showing of changed circumstances, 23 P.S. § 501(e), and in furtherance of the process, provides that the court will have domestic relations sections and personnel to receive, disburse and monitor payments. 23 P.S. § 504. *See* Support Proceedings, 42 Pa.C.S.A. § 6701 et seq., as superseded by Pa.R.C.P. 1910, Actions for Support; Revised Uniform Reciprocal Enforcement of Support Act (1968), 42 Pa.C.S.A. § 6741 et seq. Thus, upon analysis, it is apparent

that extraordinary attributes and conditions are attached to support and alimony orders, which become instruments of the court, and not subject to the control of the parties. Were we to make the enforcement of support agreements equivalent to the enforcement of support or alimony orders, then the full panoply of enforcement means would become available, including jailing for contempt. Thus, a person could be jailed on an obligation which never passed the due process accorded to court orders and is not subject to constant review for modification for change of circumstance or ability to pay.

## B.—*Support Agreements*

By comparison, agreements, whether they be separation, antenuptial, postnuptial or support, are instruments of contract in which the court has no involvement. None of the elements of due process, court review and appealability are involved in agreements such as these, which are private undertakings between two parties, each having responded to the "give and take" of negotiations and bargained consideration. As such, they are governed by the law of contracts. *Steuart v. McChesney, supra, Brown v. Hall, supra, Litwack v. Litwack, supra, VanKirk v. VanKirk,* 336 Pa.Super. 502, 485 A.2d 1194 (1984). This means, of course, they are not modifiable unilaterally; a court cannot remake or modify such an agreement as it would be the taking of property without due process of law. Also, such an agreement is solely enforceable by an action in assumpsit. *Brown, Jones, Cavazza's Estate, Exner, supra.* Since they are not court orders, the extraordinary powers flowing from a court order are not available. To jail a person for failing to pay on his agreement (which created a debt) is prohibited by our constitutions, state and federal, as imprisonment for debt. Clark, *Law of Domestic Relations,* Ch. 16.12, p. 554 (1968). Garnishment of wages or a pension is likewise uniquely applicable to court orders of support and alimony, as a legislatively empowered exercise of court authority to implement its orders. Strict

limitations are imposed on attachment of these assets, and it has been universally held they cannot be attached unless pursuant to an order of support; support agreements are specifically excluded from such enforcement. No private agreement, at least in Pennsylvania, has been ascribed with this power. *Buswell v. Buswell*, 377 Pa. 487, 105 A.2d 608 (1954).

In *Steuart*, the Court reiterated the basic and time-honored rule of contract law that a court may not rewrite a contract "for the purpose of accomplishing that which, in its opinion, may appear proper, or, on the general principles of abstract justice...." *Id.*, 498 Pa. at 51, 444 A.2d at 662 (quoting 17A C.J.S. *Contracts*, § 296(3)). Were we to disregard this fundamental rule in the instant case, we would shake the very foundation of contract law.

Mary relies on *Commonwealth ex rel. Magrini v. Magrini*, 263 Pa.Super. 366, 398 A.2d 179 (1979) for the proposition that the public policy of this Commonwealth favors the enforcement of a delinquent spouse's support obligations, whether created by private agreement or court order. However, a closer analysis of *Magrini* reveals that it only applies to court-ordered support obligations and not to private support agreements. In *Magrini*, the lower court issued an order of attachment against Mr. Magrini's pension, which was administered by the Aluminum Company of America. In reviewing the applicable Pennsylvania law, the Court upheld the attachment and found there was no enunciated policy protecting private pension funds which would override the public policy favoring family support. The *Magrini* Court held that the attachment was not prohibited by 40 P.S. § 515 (currently codified at 42 Pa.C.S.A. § 8124(b)(1)(vii)), since that statute was enacted to protect the beneficiary's family so that he or she could not voluntarily, or by means of creditor judgments, dissipate the assets and leave the family without support. *Id.*, 263 Pa.Superior Ct. at 370–71, 398 A.2d at 181. Additionally, the *Magrini* Court noted that a wife seeking to enforce a support order was not an ordinary creditor, and therefore

was not statutorily prohibited from seeking the attachment of her husband's pension. *Id.*, 263 Pa.Superior Ct. at 371 n. 3, 398 A.2d at 181 n. 3 (citing *Commonwealth ex rel. Peterson v. Peterson*, 100 Pa.Super. 600 (1930)). Thus, after balancing the competing interests, the *Magrini* Court concluded that the attachment of such benefits by a spouse pursuant to a court *order* outweighed the private employer's interest in the convenient administration of the plan. *Id.*, 263 Pa.Superior Ct. at 370–71, 398 A.2d at 181. Recently, the Pennsylvania Supreme Court in *Young v. Young, supra,* extended the *Magrini* doctrine to municipal pensions and held that equitable distribution by a New Jersey court of a Pennsylvania police pension was in the nature of support and, therefore, the pension could be attached (reversing *Young v. Young*, 320 Pa.Super. 269, 467 A.2d 33 (1983)).

While the rationale of *Magrini* upholds the public policy favoring the enforcement of support obligations, it does so only in regards to support orders entered by a court of competent jurisdiction and does not extend to private support agreements. This position is buttressed by the language of the Act of May 10, 1921, P.L. 434, § 1, 48 P.S. § 136 (utilized by the lower court to attach the pension fund), which provides in relevant part:

Whenever any court of competent jurisdiction has made an order or entered a decree or judgment against any husband requiring him to pay any sum or sums for the support of his wife or children or both, the court may issue the appropriate writ of execution against any property, real or personal, belonging to the defendant to enforce said order, decree, or judgment, and the said court may issue a writ of attachment execution, or writ in the nature of attachment execution, against any money or property to which said husband is entitled, whether under what is known as a spendthrift trust or otherwise....

The above Act specifically refers to an order, decree or judgment entered by a court of competent jurisdiction.[4] *See Jones, supra.* Because the Act makes no reference to private support agreements, we must infer that the Legislature did not intend for it to apply to such agreements. *Rossiter v. Township of Whitpain*, 404 Pa. 201, 170 A.2d 586 (1961). Furthermore, Mr. and Mrs. Hollman are not in the category of persons which section 136 purports to protect, for the simple reason that they are divorced and are no longer "husband" and "wife."[5]

▮ It is well-established that a husband's legal obligation to support his wife is terminated by a valid divorce decree. *See, e.g., Commonwealth ex rel. Smith v. Smith*, 260 Pa.Super. 203, 393 A.2d 1224 (1978); *Watson v. Watson*, 243 Pa.Super. 23, 364 A.2d 431 (1976); *Commonwealth ex rel. Platt v. Platt*, 227 Pa.Super. 423, 323 A.2d 29 (1974); *Commonwealth ex rel. Jones v. Jones, supra.* As the Honorable Edmund B. Spaeth, Jr., now President Judge of this Court, stated in *Smith*, "once the marital unity has been severed, the former spouses must start to regard each other as legal strangers." *Id.*, 260 Pa.Superior Ct. at 210, 393 A.2d at 1224. This is not altered by the 1980 Divorce Code, which provides for post-divorce alimony, as the statute is clear that if alimony is not obtained *before* the

---

**4.** In addition, the procedure under 42 Pa.C.S.A. § 6709 for attaching the wages of a person owing a duty of support also pertains solely to court-ordered support:

**§ 6709. Procedure to attach wages, etc.**

The wages, salary or commissions of any person owing a duty of support may be attached in the manner prescribed by general rule. The employer may deduct from the wages, salary or commissions of the defendant 2% of the amount paid under the *order* for reimbursement of expense involved in complying with the *order*. (emphasis added)

42 Pa.C.S.A. § 6709, which defines duty of support, provides:

**"Duty of Support".** Includes any duty of support imposed or imposable by law or by any court order,....

**5.** The applicability of the Act of May 10, 1921 has been restricted to instances where there still existed a marriage between the parties. Thus, the terms "husband" and "wife" are not to be interpreted as encompassing a former husband or former wife. *See Lippincott v. Lippincott*, 349 Pa. 501, 37 A.2d 741 (1944). *See also Barno v. Farruggia*, 6 Pa. D. & C.3d 727 (1976) (citing *Lippincott* ).

divorce, as an incident of the marriage, it *cannot* be obtained once a decree is entered, *since the relationship is terminated.* Nor is there any change in the law by virtue of the Divorce Code as it relates to separation agreements for post-divorce support, which are *not* incorporated into the divorce decree. As stated above, nothing in the 1980 Divorce Code can be construed to be relevant to a divorce and agreement entered into many years before its enactment. *Young, supra.* The agreement is not enforceable by the same means as a court order. This longstanding rule of law was reiterated in *Schmitz, supra.*

### C.—*Applicable Rules*

A further indication of the uniqueness of an alimony or support agreement is evident in the Rules of Civil Procedure regarding support. *See* Pa.R.C.P. 1910 et seq. Rule 1910.1, titled "Scope", provides:

**Rule 1910.1. Scope**

(a) Except as provided by subdivision (b), the rules of this chapter govern all civil actions or proceedings brought in the court of common pleas to enforce a duty of support.

b) The rules of this chapter shall not govern

 1) actions or proceedings for support based upon

$$. \qquad . \qquad . \qquad . \qquad .$$

(c) a contract or agreement unless the contract or agreement provides that it may be enforced by an action in accordance with these rules;....

*The agreements enforced pursuant to these rules* are those entered pursuant to rule 1910.11, which provides:

**Rule 1910.11. Office Conference. Subsequent Proceedings. Order**

d) ... If an agreement for support is reached at the conference, the officer shall prepare a written order in conformity with the agreement for signature by the parties and submission to the court together with the officer's recommendation for approval or disapproval....

 Sections (f) and (g) of Rule 1910.11 permit entry of the order or hearing de novo by the court if an issue arises which requires court determination. Rule 1910.12 provides for a similar procedure with a permanent hearing officer (who must be an attorney), with exceptions to be filed by a dissatisfied party, to be determined by the court. Thus, it is apparent there are three types of agreements possible in Pennsylvania law: 1) separation agreements unrelated to any court involvement, 2) support agreements inherent in the support procedures and resulting in a court order incorporating an agreement (Pa.R.C.P. 1910.11, 1910.12), and 3) voluntary alimony agreements, entered into prior to the divorce but incorporated in the divorce decree. (*See* 23 P.S. § 401, 502, 503 and Pa.R.C.P. 1920.31, allowing support proceedings, and Pa.R.C.P. 1920.52, which follow rules as to civil actions and not support).

The effect is that a separation contract is not enforceable pursuant to court procedures under the support rules or the Divorce Code; support agreement *orders* are enforceable pursuant to the support rules, and alimony agreements incorporated in a decree are enforceable through the Divorce Code. This includes in personam actions for support under 48 P.S. § 132, which are enforced by proceedings pursuant to § 1910.20–1910.23, as with other civil support actions. There is one exception in that any *order* for support, against either *husband or wife*, can be enforced by an in rem proceeding pursuant to 48 P.S. § 133, 136–141. *See Stein v. Stein,* 487 Pa. 1, 406 A.2d 1381 (1979).

 The agreement sub judice fits none of the categories enforceable under the Rules, Pa.R.C.P. 1910, et seq., nor pursuant to 48 P.S. § 133–141, nor pursuant to the Divorce Code, § 503. A support order may be enforced by contempt proceedings pursuant to *Rule 1910.12*, wage attachment pursuant to *Rule 1910.22*, and *execution* upon judgment for arrears pursuant to *Rule 1910.23*. In a similar fashion, an alimony order may be enforced under the support rules, *supra*, or the Divorce Code, *supra*. A support agreement can only be enforced by an action in assumpsit, specific

performance, or upon obtaining a judgment on arrears and execution against property.

 In the instant case, the former wife was incapable of having the original support agreement incorporated into the divorce decree, which is permissible under the present Divorce Code.[6] By this procedure, which allows the court to review the terms of the original support agreement (§ 501(f)) and upon incorporating it into the divorce decree, the agreement merges into the decree.[7] In *Commonwealth ex rel. Tokach v. Tokach*, 326 Pa.Super. 359, 474 A.2d 41 (1984) (Opinion by Johnson, J.), this Court clearly distinguished incorporated agreements which are enforced as orders of court from unincorporated agreements which are enforced by assumpsit actions. *See also Madnick v. Madnick*, 339 Pa.Super. 130, 488 A.2d 344 (1985). We cannot rewrite the prior divorce law to treat the present agreement as though it could have been incorporated and thereby, transform it into a support order. Mary could not pursue this procedure, and she must be treated as an ordinary creditor in her efforts to execute the judgment against Wade. *Schmitz, supra.* It is well known that the reason for divorce reform evidenced by the Act of 1980 was to cure some of the economic inequities, including the injustice caused by non-incorporated separation agreements. However unreasonable and inadequate a support agreement

---

**6.** Section 501(e), (f) of the Divorce Code provides:
 **§ 501. Alimony**
 (e) Any order entered pursuant to this section is subject to further order of the court upon changed circumstances of either party of a substantial and continuing nature whereupon such order may be modified, suspended, terminated, reinstituted, or a new order made. Any such further order shall apply only to payment accruing subsequent to the petition for the requested relief. Remarriage of the party receiving alimony shall terminate the award of alimony.
 (f) Whenever the court shall approve an agreement for the payment of alimony voluntarily entered into between the parties, such agreement shall be deemed the order of the court and may be enforced as provided in section 503. (footnote omitted)

**7.** It is common practice to incorporate separation and/or support agreements into divorce decrees. *See* Uniform Marriage and Divorce Act, § 306(d)(1). *See also* 24 Am.Jur.2d, *Divorce and Separation* § 840.

appears,[8] there were trade-offs, as is the case in any agreement. Under current law, permanency and irrevocability, such as here, can only be obtained in the same fashion—by agreement—which is not incorporated into the decree. *See Tokach, supra.* If this was a court approved alimony agreement, it would be reviewable and modifiable, and the concept is rehabilitative, time limited and not restitutional. 23 P.S. § 501(c), (e). We can only guess at what the order would be and its duration, if entered by a court pursuant to present law. Under the prior divorce law (pre–1980), because of the necessity to prove fault and that the petitioner was innocent and injured, a lifetime support agreement was frequently the key to marital freedom. Thus, it is useless to attempt to rationalize the conditions of a support agreement entered into in 1969 with the philosophy and law in effect in 1983.

Concerning the welfare of children whose parents are divorced when agreements are involved, our courts have consistently disregarded support agreements which fail to provide adequate support for minor children. *See, e.g., Brown v. Hall,* 495 Pa. 635, 643 n. 11, 435 A.2d 859, 863 n. 11; *Commonwealth ex rel. Snively v. Snively,* 206 Pa.Super. 278, 212 A.2d 905 (1965). Furthermore, the duty to support one's children is ongoing and survives a decree of divorce. *Silverstein v. Silverstein,* 246 Pa.Super. 503, 371 A.2d 948 (1977). Thus, with our decision today, the support rights of children remain intact.

In addition, our result in no way implies that there should not be an exception to the exemption from attachment of pensions when the proper procedure is followed to enforce support obligations. Therefore, we wholeheartedly agree with the *Magrini* and *Young* decisions as far as they apply to support *orders* entered by a court of competent jurisdiction. In the case before us, however, there was only a private support agreement which was not incorporated into the decree of divorce; therefore, the instant case is readily

**8.** *Hollman v. Hollman,* 130 P.L.J. at 64.

distinguishable from *Magrini*.[9] Moreover, as discussed above, the present dispute is governed by the rationale of this Court's decision in *Schmitz*.

### Subject Matter Jurisdiction

The next bothersome issue in this case relates to the jurisdiction of the Civil Division of the Court of Common Pleas to enter judgment and order of attachment dated June 4, 1981. As noted above in footnote 2, the first order entered to attach the pension fund was issued by a judge of the Civil Division of the Allegheny County Court of Common Pleas, the second order dismissing the attachment of the pension fund, emanated from the lower court's Family Division.

Article V of the Pennsylvania Constitution establishes the Judicial System of Pennsylvania. The Schedule to the Judiciary Article provides for the composition, jurisdiction and administration of the Judicial System, and its provision shall have the same force and effect as those contained in the numbered sections of Article V. Section 17 of the Schedule provides:

### ALLEGHENY COUNTY

#### § 17. Courts

Until otherwise provided by law:

---

**9.** It should be noted that the leading federal cases allowing the attachment of pension funds in order to protect familial support have only upheld support *orders* and not private support agreements. *See Cody v. Riecker*, 594 F.2d 314 (2d Cir.1979); *American Telephone and Telegraph Company v. Merry*, 592 F.2d 118 (2d.Cir.1979); *Cartledge v. Miller*, 457 F.Supp. 1146 (S.D.N.Y.1978).

In *Baker v. Baker*, 6 Pa. D & C 3d, 312 (1978), the court held that the exception in the Pennsylvania Civil Procedural Support Act, Act of July 13, 1953, P.L. 431, Sec. 9, formerly 62 P.S. § 2043.39, now 42 Pa.C.S. § 6709, permitting the attachment of wages in support proceedings, applies only in the case of court support orders and not to private support agreements between the parties. As in the instant case, the agreement between the parties in *Baker* was never reduced to a court order. Although we are not bound by this decision of the Court of Common Pleas of Montour County, we nevertheless conclude that its reasoning is correct.

(a) The court of common pleas shall consist of a trial division, an orphans' court division and a family court division; the courts of oyer and terminer and general jail delivery and quarter sessions of the peace, the county court, the orphans' court, and the juvenile court are abolished and their present jurisdiction shall be exercised by the court of common pleas. Until otherwise provided by rule of the court of common pleas and, except as otherwise provided in this schedule, the court of common pleas shall exercise the jurisdiction of the present court of common pleas and the present county court through the trial division. Until otherwise provided by rule of the court of common pleas, the jurisdiction of the present orphans' court, except as otherwise provided in this schedule, shall be exercised by the court of common pleas through the orphans' court division.

(b) Until otherwise provided by rule of the court of common pleas, *the court of common pleas shall exercise jurisdiction in the following matters through the family court division:*

(i) *Domestic Relations: Desertion or nonsupport of wives, children and indigent parents, including children born out of wedlock; proceedings, including habeas corpus, for custody of children; divorce and annulment and property matters relating thereto.*

(ii) Juvenile Matters: All matters now within the jurisdiction of the juvenile court.

(iii) Adoptions and Delayed Birth Certificates. (emphasis added) [10]

The article provides for other divisions to exercise Criminal, Civil (Trial) and Orphans' Court matters. The subject matter in this case should properly have been exercised in the Family Division, and the entertainment of the first procedure by an order sur judgment in the Civil Division was

**10.** Section 26(b) of Act 1976, July 9, P.L. 586, No. 142, the Judiciary Act of 1976, generally effective June 27, 1978, supersedes and suspends this section absolutely effective upon the date upon which the provision is or was suspended absolutely by general rule. No such general rule has been promulgated as of this writing.

improper. *See Balter v. Balter,* 284 Pa.Super. 350, 425 A.2d 1138 (1981).[11]

There is a possibility of construction that the Civil Division properly exercised jurisdiction in this matter from the footnote in *Guerin v. Guerin,* 296 Pa.Super. 400, 409 n. 3, 442 A.2d 1112, 1113–14 n. 3 (1982). *Guerin* did not turn on which division had jurisdiction but whether a support agreement could be modified as is the case of a support order, which we have analyzed here. To the extent that footnote 3 of *Guerin* relies on 42 Pa.C.S.A. § 952 as authority that any division may exercise the power of any other division, it flies in the face of the reasons for establishing divisions of the court and the actual meaning of section 952. Section 952 simply is an implementing statute for Article V, Section 5, of the Pennsylvania Constitution which provides as follows:

### § 5. Courts of common pleas

There shall be one court of common pleas for each judicial district (a) having such divisions and consisting of such number of judges as shall be provided by law, one of whom shall be the president judge; and

(b) having unlimited original jurisdiction in all cases except as may otherwise be provided by law.

Section 4 of the Schedule to Article V of the Constitution provides:

### § 4. The courts of common pleas

Until otherwise provided by law, the several courts of common pleas shall exercise the jurisdiction now vested in

---

**11.** In *Balter,* this Court stated:

Clearly, it would be anomalous to suggest that divisional assignments among the court of common pleas could properly be characterized as relating to anything other than subject matter jurisdiction. *See, e.g., Brumm v. Pittsburgh Nat'l Bank,* 213 Pa.Super. 443, 249 A.2d 916 (1968). To hold otherwise, and deny appellate review no matter how patently erroneous a plaintiff's selection of division may be, would be tantamount to obliterating the broad areas of law to which each division of the court of common pleas is to direct its attention. *See generally Posner v. Sheridan,* 451 Pa. 51, 299 A.2d 309 (1973).

*Id.,* 284 Pa.Superior Ct. at 356, 425 A.2d at 1141.

the present courts of common pleas. The courts of oyer and terminer and general jail delivery, quarter sessions of the peace, and orphans' courts are abolished and the several courts of common pleas shall also exercise the jurisdiction of these courts. Orphans' courts in judicial districts having separate orphans' courts shall become orphans' court divisions of the courts of common pleas and the court of common pleas in those judicial districts shall exercise the jurisdiction presently exercised by the separate orphans' courts through their respective orphans' court division.

While section 952 of the Judicial Code provides that "[i]n a court of common pleas having two or more divisions each division of the court is vested with the full jurisdiction of the whole court", this is delimited by section 5103(c) which directs:

(c) **Interdivisional transfers.**—If an appeal or other matter is taken to, brought in, or transferred to a division of a court to which such matter is not allocated by law, the court shall not quash such appeal or dismiss the matter, but shall transfer the record thereof to the proper division of the court, where the appeal or other matter shall be treated as if originally filed in the transferee division on the date first filed in a court or magisterial district.

Not only is footnote 4 of *Guerin* dicta, it does not fully state the law. As stated by Justice Eagen in *Posner v. Sheridan*, 451 Pa. 51, 299 A.2d 309 (1973):

While the 1968 Constitution had the felicitous result of abolishing the old system of separate courts and amalgamating them into a unified common pleas system, nothing in these new provisions permits plaintiffs to file complaints, or courts to docket them willy-nilly without regard to the appropriate division. In point of fact the language of the Schedule to the Judiciary Article establishes otherwise. (footnote omitted)

Is there any question, for example, that even under the new Constitution it would be inappropriate for an estate

to be probated in family court division? To ask the question is to answer it. If it makes no difference where a case was docketed, then we are left to wonder to what purpose were such divisions created by the drafters of the 1968 Constitution.

*Id.*, 451 Pa. at 58–59, 299 A.2d at 312–13.

Paradoxically, *Posner* was an assumpsit action for debt based on a California support decree, and while the majority inferred it was a matter not necessarily within the Family Division jurisdiction, which heard the case, it remanded on other matters. In four Concurring and Dissenting Opinions the consensus was that an assumpsit action based on a support matter was properly within the Family Court jurisdiction.

At any rate, failure to file an action in the appropriate jurisdiction is not fatal as stated by Justice Pomeroy in *Commonwealth v. Wadzinski*, 485 Pa. 247, 401 A.2d 1129 (1978), *on remand*, 266 Pa.Super. 56, 403 A.2d 91 (1979), *rev'd on other grounds*, 492 Pa. 35, 422 A.2d 124 (1980):

> The court of common pleas, as reconstituted, possesses the jurisdictions of the former courts of common pleas, courts of quarter sessions, courts of oyer and terminer, orphans' courts, and juvenile courts. One of the purposes of the unified court is, of course, to simplify procedure and remove archaisms from the judicial system. A case may not be dismissed because brought in the wrong court; if the matter is justiciable, there is jurisdiction in the court of common pleas to hear it, and in a multi-division court the remedy for bringing the case in the wrong division is not a dismissal, but a transfer of the matter to the correct division. (footnote omitted)

*Id.*, 485 Pa. at 254, 401 A.2d at 1132. He then cites the provisions of Section 5 of Article V, footnote 9, p. 1132, and sections 952 and 5103(c) of the Judicial Code, footnote 10, pp. 1132, 1133.

Thus we conclude that while the Civil Division had the jurisdiction to hear and decide this matter, the appropriate action was to transfer this action to the Family Division for

disposition, which would have resulted in the application of the greater expertise which the Family Division could bring to its determination, consistent decisions in the lower court, and avoidance of the appearance of one judge overruling the decree of another judge.

Accordingly, we affirm the Order of December 22, 1982 entered in the Family Division and vacate the Order of June 4, 1981 entered in the Civil Division.

SPAETH, President Judge, and CAVANAUGH and McEWEN, JJ., join TAMILIA, J., except as to subject matter jurisdiction, on which issue they join JOHNSON, J.

JOHNSON, J., files concurring and dissenting opinion in which ROWLEY, J. joins.

SPAETH, President Judge, and CAVANAUGH and McEWEN, JJ., join JOHNSON, J., as to subject matter jurisdiction only.

BROSKY, J., files dissenting opinion.

BROSKY, Judge, dissenting:

I dissent. I would affirm the order of June 4, 1981, Appeal No. 707 Pittsburgh, 1981 and reverse the order of February 23, 1982, Appeal No. 1 Pittsburgh, 1983.

The majority's disposition of this case is, indeed, consistent with *Schmitz v. Schmitz*, 305 Pa.Super. 328, 451 A.2d 555 (1982). However, for the following reasons I would overrule *Schmitz.*

The Superior Court case of *Commonwealth ex rel. Magrini v. Magrini*, 263 Pa.Super. 366, 398 A.2d 179 (1979), interpreted virtually identical statutory language to that analyzed in *Schmitz.*[1]

Clearly, these types of statutes were specifically drawn to protect the beneficiary's family so he (or she) could not voluntarily or by means of creditor judgments, dissipate the assets and leave his family without a means of

---

1. *Schmitz* analyzed 42 Pa.C.S. § 8124(b)(1)(vii). The statute interpreted in *Magrini* is 40 P.S. § 515.

support. In view of this, we decline to interpret the Act of 1917, supra, to protect a delinquent husband's pension funds from attachment for support.[3]

---

[3] Additionally, we note that a wife enforcing a support order is not a "creditor." *Commonwealth ex rel. Peterson v. Peterson,* 100 Pa.Super. 600 (1930).

*Commonwealth ex rel. Magrini v. Magrini,* supra, 263 Pa.Superior Ct. at 370-1, 398 A.2d at 181.

Thus, it would appear that, the exemption not being applicable, an attachment would be valid in these circumstances. However, there is a complicating factor.

Note 3, above, states that a wife enforcing a support order is not a creditor. This is where the opinion in *Schmitz*—on which the *en banc* court below relied—comes into play.

*Schmitz* involved the attempted garnishment of the cash surrender value of life insurance policies to satisfy arrearages in payments owed under a support agreement. In an alternative holding, the opinion parallels the first two steps of our analysis: noting a similar statutory exemption and the exception to the exemption for support payments. *Schmitz* then went on to state that since the parties were divorced, she was a creditor and the exception to the exemption did not apply.

In the instant case we do not believe the [*Commonwealth v.*] *Berfield* [160 Pa.Super. 438, 51 A.2d 523 (1947)] language is controlling. It must be emphasized that the parties were divorced. There is no longer a legal unity of husband and wife. The obligation here is imposed more so in contract than as an incident arising from the marital status. An absolute decree of divorce terminates the duty of a spouse to support his or her former spouse. Although a separation agreement providing support for a spouse will continue subsequent to a divorce, the obligation is based on a contract. The legal relationship of marriage has been severed.

Therefore, we find that the Schmitz' divorce precludes us from applying policy relevant to the marital status.

Appellee must be considered a judgment creditor and thus, under Pennsylvania law, her garnishment of the cash surrender value of the two life insurance policies cannot be allowed.

*Schmitz,* supra, 305 Pa.Super. at 332, 451 A.2d at 557 (citations omitted).

The holding of *Schmitz* is clear. Once a couple is divorced, the exception for support to the statutory exemption from attachment no longer applies. The facts in *Schmitz* vary from those before us in only one particular. *Schmitz* involved 42 Pa.C.S. § 8124(c)—the insurance exemption— and not, as here, 42 Pa.C.S. § 8124(b)(1)(vii)—the pension exemption. This sole difference in no way renders the holding of *Schmitz* inapplicable to the case before us. In fact, unless rejected, *Schmitz* would govern our resolution of the issue in question.

From *Schmitz* it would follow, therefore, that since Wade and Mary were divorced at all times during which support payments were not made, the exemption from attachment in 42 Pa.C.S. § 8124(b)(1)(vii) is in force here.

\* \* \*

However, in good conscience I do not conclude that this Court should follow the law as it presently stands. The rule in *Schmitz* creates an unjustified exception to the rule in *Magrini.* Further, this exception applies to the vast majority of support cases—those in which the parties are divorced.

The exception created by *Schmitz* ignores the rationale, quoted above, of the *Magrini* case. The exemption from attachment statutes were designed to protect the interests of the family. It is perverse, to say the least, that those statutes should be used to deprive the family of support. That statutory purpose does not become inapplicable once the parties are divorced.[2]

---

**2.** This would be especially true with regard to the children of a terminated marriage. I fail to comprehend why the divorce of the childrens' parents should deprive the children of the very means to obtain support. Divorce does not alter the parent-child relationship.

Nor is the statutory purpose, as interpreted in *Magrini*, inapplicable by virtue of the fact that the instant default judgment arose out of a support agreement instead of a support order.[3] While there may be a superficial appearance that Mary is a creditor because she was seeking to enforce a contract, it is readily apparent that a support agreement is not a standard type of contract but is, for our purposes, *sui generis*. In terms of the statutory purposes, Mary has not become a creditor—totally indistinguishable from Wade's grocer or tailor—simply because she did not go to court and have the support agreement entered as an order. Her rights are still those which *Magrini* seeks to give special protection.

A contrary conclusion would put us in the position of compelling individuals, who are otherwise capable of amicably working out a support agreement between them, to each hire counsel and to go to court to seek a support order. The added expense and the injection of the adversarial process and the public exposure of private matters and the formality inherent in those procedures would be the inevitable, undesirable and unnecessary consequences of such requirements. This would also run counter to the laudable

> When a husband divorces a wife he does not divorce their children. Specifically, the duty of the parents to provide for their children continues after the divorce. Even when there are no children involved, as here, the support of the former spouse comes within the statutory purpose. Thus, I would find no rational basis for the effect of the *Schmitz* opinion on the case before us. Where the support order is not apportioned between the wife and children, it would be counterproductive to the childrens' interests to prevent the assets being attached.

**3.** In this connection I would note with approval the opinion of the hearing court which granted the attachment. "Under the divorce laws that existed at the time of this divorce, no alimony could be paid to a former spouse after a divorce from the bonds of matrimony. That being the case, it was not at all uncommon to induce spouses to forego divorce contests by entering into support agreements. ... This court will not draw a distinction between a support order entered by a court of competent jurisdiction and a support agreement entered into voluntarily by the parties in order to facilitate the obtaining of the divorce. The agreement was one for support and as such is favored by the public policy of the Commonwealth." *Hollman v. Hollman*, 130 Pgh. L.J. 63 at 64 (1981) (Wekselman, J.).

trend in family law of reducing litigiousness and encouraging informal resolution.[4]

*Schmitz* is unwise even when, as here, no children are involved and the support order is only for the benefit of the divorced spouse. The former spouse's duty to support the other spouse is an on going one. It is similarly undesirable even if the support order is apportioned between the children and the former spouse. The children are, after all, living with that former spouse and must share in her destitution if the support order cannot be enforced as to her. The rationale of the exemption statutes applies under these circumstances. I conclude that *Schmitz* should be expressly overruled.

JOHNSON, Judge, concurring and dissenting:

I concur in so much of the Majority Opinion as deals with the issue of whether pension payments are subject to attachment in satisfaction of a judgment entered for arrearages in payments due under a support agreement. I join in the ruling of the court which *vacates* the order entered on June 4, 1981 at GD 81–11344 and *affirms* the order entered December 22, 1982 at FD 81–10538.

I am constrained to dissent from that portion of the Majority Opinion which would find improper the entertainment, by the Civil Division of the Allegheny County Court of Common Pleas, of an assumpsit action arising out of a support agreement. The majority relies on the panel majority opinion in *Balter v. Balter*, 284 Pa.Super. 350, 425 A.2d 1138 (1981) for the proposition that divisional assignments among [within] the court of common pleas could not relate to "anything other than subject matter jurisdiction." *Id.*, 284 Pa.Superior Ct. at 356, fn. 3, 425 A.2d at 1141, fn. 3.

I find the carefully reasoned dissent by my esteemed colleague, Judge Cavanaugh, in *Balter* to be most persuasive on this issue. His analysis of the case law, and his rejection of the notion that a jurisdictional issue is raised

**4.** Through, for example, mediation.

merely by consideration of the division within a common pleas court in which an action is commenced is, in my view, unassailable. See *Balter v. Balter, supra,* 284 Pa.Superior Ct. at 360–64, 425 A.2d at 1143–45 (Dissenting Opinion, Cavanaugh, J.)

Although the majority on this appeal, and the two-judge majority in *Balter,* rely heavily on Section 17 of the Schedule to Article V of the Pennsylvania Constitution, it would seem that Section 17 has lost a good bit of its vitality by virtue of the enactment of the Act of July 9, 1976, P.L. 586, No. 142, the Judiciary Act of 1976, generally effective June 27, 1978, which provides in Section 26(b) thereof:

(b) Subsections (*o*), (p) and (q) of section 16, and sections 17 and 25, Schedule to Article V of the Constitution of Pennsylvania, adopted April 23, 1968, are hereby superseded. and suspended absolutely effective upon the date upon which the provision is or was suspended absolutely by general rule.

In enacting the Judicial Code [Section 2 of Act No. 142, *supra*], our legislature expressly dealt with the status of court divisions as follows:

### § 952. Status of court divisions

The divisions of a court of common pleas are *administrative units* composed of those judges of the court responsible for the transaction of specified classes of the business of the court. *In a court of common pleas having two or more divisions each division of the court is vested with the full jurisdiction of the whole court but the business of the court may be allocated among the divisions of the court by or pursuant to general rules.* 1976, July 9, P.L., 586, No. 142, § 2, effective June 27, 1978, 42 Pa.C.S. § 952.

(emphasis added).

In a case decided by this court thirteen months after the decision in *Balter,* our distinguished colleague, Judge Lipez, speaking for a unanimous three-judge panel, recognized that, by virtue of Section 952 of the Judicial Code, any division would have jurisdiction of the assumpsit action,

regardless of whether it was the division to which that type of case had been administratively assigned. *Guerin v. Guerin,* 296 Pa.Super. 400, 404 fn. 3, 442 A.2d 1112, 1113–14 fn. 3 (1982). This point was first recognized by Judge Cavanaugh in his *Balter* dissent.

Judge Cavanaugh has done a careful job of collecting the cases pertinent to this issue, in *Balter,* including the decision of our sister court in *Sto-Rox Focus on Renewal Neighborhood Corporation v. King,* 40 Pa.Commw. 640, 398 A.2d 241 (1979) (Opinion by Mencer, J.). No purpose would be served by repeating his excellent analysis here.

■■■ As observed by Judge Cavanaugh in *Balter,* I also conclude that the holding of our supreme court in *Binder v. Miller,* 456 Pa. 11, 317 A.2d 304 (1974) has lost none of its precedential value, and remains the law which we must follow. The question as to which division of a court of common pleas is the proper forum for commencing an action in assumpsit involving a support agreement is not one of jurisdiction, but of internal common pleas court administration. *Posner v. Sheridan,* 451 Pa. 51, 299 A.2d 309 (1973). *Accord, Commonwealth ex rel Stein v. Stein,* 487 Pa. 1, 406 A.2d 1381 (1979); *Binder v. Miller, supra.*

I'm prepared to await a decision from our supreme court which holds otherwise. Hence this dissent.