GREINER, APPELLEE, *v.* GREINER, APPELLANT.

[Cite as Greiner v. Greiner (1979), 61 Ohio App. 2d 88.]

(No. 37964—Decided January 11, 1979.)

*Mr. Ronald J. McConnell,* for appellee.

*Mr. James Carnes* and *Mr. Peter Weinberger,* for appellant.

KRENZLER, J. On November 25, 1975, plaintiff-appellee, Frances V. Greiner, hereinafter referred to as appellee, and defendant-appellant, Charles L. Greiner, hereinafter referred to as appellant, husband and wife, entered into the following separation agreement:

### Separation Agreement

"This agreement, made and entered into pursuant to the authority under the Ohio Revised Code, between Frances V. Greiner, hereinafter referred to as the Wife, and Charles L. Greiner, hereinafter referred to as the Husband, who hereby acknowledge and represent:

"That they are Husband and Wife, having married in Salem, Ohio, on July 16, 1971;

"That no children have been born as issue of said marriage;

"That, having separated and intending to live separately and apart from each other for life, said Wife and Husband

desire to and by these presents do forever and completely settle and determine:

"A. The past, present and future care, maintenance and support of either;

"B. The right to any and all property, real and personal, each may have by virtue of the marriage;

"C. All other benefits and privileges conferred and all obligations imposed on each by virtue of their marriage relationship or otherwise accruing to either.

"Now, therefore, in consideration of the foregoing promises and the mutual promises and undertakings recited hereafter, said Wife and Husband agree:

"*1. Separation*

"Each shall hereafter continue to live separate and apart from the other, and each shall go his and her own way without direction, control or molestation from the other, the same as though unmarried, and further, each shall not annoy, harass or interfere with the other in any manner whatsoever.

"*2. Division of Property*

"The parties hereto have, prior to the date of signing this Agreement, effected a division of personal property, including household goods, furnishings, furniture and appliances, to their own mutual satisfaction, and agree that all of the personal items now in the possession of the respective parties hereto shall be and remain the sole and exclusive property of such party, free and clear of any and all claim of the other party.

"*3. Automobile*

"The parties mutually agree that a certain 1968 Ford automobile now titled in the name of the Husband and now in his possession, shall be and remain the Husband's sole property, free and clear of any claim or claims on behalf of the Wife. The Husband agrees to indemnify and save harmless the Wife from any and all liens and loan payments which may now exist against said automobile.

"The parties mutually agree that a certain 1963 Mercedes Benz automobile now titled in the name of the Wife and now in her possession, shall be and remain the Wife's sole property, free and clear of any claim or claims on behalf of the Husband. The Wife agrees to indemnify and save

harmless the Husband from any and all liens and loan payments which may now exist against said automobile.

"*4. Real Estate*

"The Husband shall convey forthwith in full and complete discharge of his marital obligations by sufficient quitclaim deed, all his right, title and interest in and to a certain parcel of real estate known municipally as 1435 Wagar Avenue, Lakewood, Ohio.

"The Wife assumes and agrees to pay the remaining unpaid balance on the first mortgage loan now existing against the premises hereinabove designated and further agrees to indemnify and hold harmless the Husband from any claim or damages arising from said mortgage loan.

"*5. Indebtedness*

"The Wife agrees, in full discharge of her obligations thereunder, to pay the balance of the bill now due and owing to J. C. Penney Company of approximately $250.00, and in addition, agrees to pay to Sears, Roebuck & Company the sum of $500.00, as and for her share of the bill now due and owing at that institution.

The Husband assumes and agrees to pay the remaining unpaid balances on all other indebtedness now existing against either the Husband or the Wife and as a result of the tenure of the marriage, and further the Husband agrees to indemnify and hold harmless the Wife from any claim arising from said indebtedness, other than thereinbefore described, except the Wife's Society Master Charge, American Express, Carte Blanche, and Cleveland Clinic balances.

"*6. Insurance*

"The parties agree that the Wife will pay the premiums on two policies of life insurance upon the life of the Husband issued by Prudential Life Insurance Company, totaling a face value of $15,000, as long as she remains designated as beneficiary thereof.

"*7. Alimony and Attorney Fees*

"The parties mutually agree that no alimony payments, other than herein specifically set forth, shall be payable from the Husband to the Wife.

"The parties agree further that each party hereto shall be responsible for his or her own counsel fees.

*"8. Non-Use of Other's Credit*

"Neither the Husband nor the Wife shall hereafter incur any debts or obligations upon the credit of the other, and shall indemnify and save the other absolutely harmless from any such debts or obligations so charged or otherwise incurred.

*"9. Disclosure*

"Each party has entered into this Agreement with knowledge of the nature, extent and value of the other's property, real and personal, and of the other's earnings.

*"10. Law Applicable*

"All the provisions of this Agreement shall be construed and enforced in accordance with the applicable laws of the State of Ohio.

*"11. Enforcement*

"If either the Husband or the Wife defaults in the performance of any of the obligations herein set forth, and it becomes necessary to institute legal proceedings to effectuate performance of any provisions of this Agreement, then in such case, the party found to be in default shall pay all expenses, including reasonable attorney fees, incurred in connection with such enforcement proceedings.

*"12. Full Understanding*

"Each party understands all of the terms herein set forth, and that all of said terms represent and constitute the entire understanding between them, and that each has read this Agreement and finds the same to be in accordance with his and her understanding, and each does hereby voluntarily execute this Agreement and affix his and her signature hereto in the presence of the witnesses indicated below.

"The Husband is fully aware that attorney Ronald H. McConnell does not represent him. The Husband acknowledges that he has been given full opportunity to evaluate his need for representation free of any potential conflict and to obtain his own counsel, and he hereby consents to attorney Ronald H. McConnell representing only the Wife and proceeding with the dissolution.

*"13. Modification by Parties*

"Except as herein otherwise provided, this Agreement shall not be altered or modified, unless it be done in writing and signed by both parties.

*"14. Dissolution*

"The parties hereto agree that this document shall become part of a Petition for Dissolution of Marriage to be filed in the Common Pleas Court of Cuyahoga County, Ohio, Domestic Relations Division, immediately after the execution of this document. Both parties further agree that each will do any and all necessary acts to facilitate the action for dissolution of marriage in said Court, including but not limited to the signing of all necessary documents and the appearance in Court at the final hearing."

A petition for dissolution of marriage was filed with the separation agreement attached. R. C. 3105.61.

On January 8, 1976, when the parties appeared in court to finalize the dissolution, appellant stated that he did not wish a dissolution of marriage and the court dismissed the petition pursuant to R. C. 3105.65 (A).

On January 13, 1976, the appellee Frances V. Greiner filed a complaint against the appellant Charles L. Greiner for divorce.

The complaint of the appellee alleges that the parties were married on July 16, 1971, and that no children were born as issue of said marriage; that the appellant has been guilty of gross neglect of duty and extreme cruelty; and that the appellee and appellant are the joint owners of the premises known as 1435 Wagar Avenue, Lakewood, Ohio. The appellee prayed for a divorce, a reasonable sum as and for permanent alimony, and that she be awarded appellant's interest in the jointly owned real estate and personal property and a reasonable sum as to attorney fees. The appellant filed an answer in the form of a general denial on February 20, 1976, and a hearing was held on the complaint on January 4, 1977.

In summary, the transcript of proceedings of the trial for divorce contains testimony concerning the parties' marriage, the relationship between the parties and their financial dealings. The separation agreement was entered into evidence as Exhibit [E]. The record reflects that under the terms of the separation agreement, the parties were required to perform certain acts; that some were accomplished at the time the separation agreement was executed; and that the appellee testified that she did pay Sears Roebuck $500 as provided in

the agreement. At the conclusion of the hearing, the trial court entered judgment for the appellee and found that the parties had been married for more than six months preceding the filing of the action and that no children were born of the marriage. The court found that the appellant was guilty of gross neglect of duty and that the appellee was entitled to a divorce. The court also found that prior to the hearing, the parties had entered into a separation agreement which had been partially performed and ordered the same attached to the judgment entry for the purposes of identification and marked as Exhibit [A]. It is noted that the trial court neither made a finding that the separation agreement was fair, just and reasonable, nor incorporated it by reference into the judgment entry of divorce. Also, the trial court did not find that the separation agreement was not fair, just and equitable and therefore invalid.

The court then ordered that the appellee be granted a divorce, that the marriage contract existing between the parties be dissolved and set aside and that the appellant pay the costs of proceedings. The entry of May 9, 1977, contained nothing further.

The appellant filed a timely notice of appeal from the trial court's judgment and assigns one error.

"The trial court erred in failing to decide the questions of alimony, support and a division of property independent of the separation agreement signed by the parties pursuant to prior dissolution of marriage proceedings."

This assignment of error raises one basic issue—that is, the effect of a dismissal of a petition for dissolution of marriage upon a separation agreement attached to the petition. It is the appellant's principal contention that the separation agreement of November 25, 1975, was entered into only in contemplation of a dissolution of marriage under R. C. 3105.61, and that when the petition for the dissolution of marriage was dismissed, the separation agreement became null and void. Consequently, the trial court could not incorporate the separation agreement into the decree, but should have ruled on every issue in the complaint. The appellee contends that the separation agreement survived the dismissal of the dissolution petition.

R. C. 3103.05 and R. C. 3103.06 authorize married persons to enter into separation agreements which are valid and binding contracts. In such contracts, a husband and wife agree to an immediate separation and make provision for the support of either of them and their children during the separation, division of property, and other related issues.

Separation agreements may be either voluntary or mandatory, depending upon whether the agreement is entered into pursuant to a divorce action, R. C. 3105.01, alimony action, R. C. 3105.17, or a dissolution proceeding, R. C. 3105.61.

As part of a divorce action, under R. C. 3105.01, or alimony only action, under R. C. 3105.17, married persons may voluntarily enter into a separation agreement. If the parties do enter into a separation agreement, that agreement becomes a valid and binding contract between the parties. *Tullis* v. *Tullis* (1941), 138 Ohio St. 187; *Mendelson* v. *Mendelson* (1930), 123 Ohio St. 11; *Hawgood* v. *Hawgood* (1973), 33 Ohio Misc. 681. Unless and until a separation agreement is declared invalid, it continues to be a valid, binding and enforceable contract. *Mendelson* v. *Mendelson, supra; see Wierwille* v. *Wierwille* (1973), 34 Ohio St. 2d 17, at 25; *Mozden* v. *Mozden* (1954), 162 Ohio St. 169, at 172.

At the time the divorce or alimony action is set for hearing and the separation agreement is submitted to the court, if the court finds the agreement fair, just and reasonable, and incorporates it into the decree, the agreement is superseded by the decree and its terms are imposed not by contract, but by decree. *Wolfe* v. *Wolfe* (1976), 46 Ohio St. 2d 399; *Robrock* v. *Robrock* (1958), 167 Ohio St. 479; *Newman* v. *Newman* (1954), 161 Ohio St. 247; *Law* v. *Law* (1901), 64 Ohio St. 369.

The foregoing are not the only circumstances in which a separation agreement may be used in terminating a marriage.

Effective September 23, 1974, the Ohio legislature enacted R. C. 3105.61 through .65, entitled "Dissolution of Marriage." These sections provide for a dissolution of marriage, but do not require grounds upon which a dissolution must be granted, such as are required under R. C. 3105.01 in a divorce action. All that is required is a petition for dissolu-

tion of marriage signed by both spouses, with an attached and incorporated separation agreement agreed to by both spouses. Thus, a separation agreement is mandatory in dissolution proceedings. R. C. 3105.63. Not less than thirty, nor more than ninety days after the filing of a petition for dissolution of marriage, both spouses shall appear before the court and each spouse shall acknowledge under oath that he has voluntarily entered into the separation agreement attached to the petition and that he is satisfied with its terms and that he seeks dissolution of the marriage. R. C. 3105.64.

However, if at the time of the hearing, either spouse is not satisfied with the separation agreement, or does not wish a dissolution of marriage, the court shall dismiss the petition and refuse to validate the proposed separation agreement. R. C. 3105.65 (A).

If, upon review of the testimony of both spouses and of the report of the investigator, the court approves the separation agreement and any amendments thereto agreed upon by the parties, it shall grant a decree of dissolution of marriage incorporating the separation agreement. R. C. 3105.65 (B).

R. C. 3105.65 (A) contains language which leads us to conclude that a separation agreement is a tentative and proposed agreement until the dissolution is granted. The language to which we refer is: "If at the time of the hearing, either spouse is not satisfied with the separation agreement, or does not wish a dissolution of the marriage, the court shall dismiss the petition and refuse to validate the proposed separation agreement." R. C. 3105.65 (A). Either party at the time of the hearing has the opportunity to repudiate the separation agreement and refuse to proceed with the dissolution of marriage. If this is done, the court must dismiss the petition. This is mandatory.

In R. C. 3105.61 through R. C. 3105.65, the legislature departed from past policies and provided for the granting of a divorce for no reason, to be finalized within ninety days of the filing of the petition, and mandated that a separation agreement be attached to the dissolution petition. Because of the nature of the dissolution proceeding, the legislature affords either party the opportunity, under R. C. 3105.65 (A), to reconsider his or her decision up until the last moment, and, if

either party is dissatisfied with the separation agreement or does not wish a dissolution, that party may elect not to proceed with the dissolution, and thus repudiate the separation agreement.

Thus, a separation agreement entered into for the *sole* purpose of a dissolution of marriage does not become a valid separation agreement if it is repudiated at the time of the hearing and the petition for dissolution of marriage is dismissed.

Whether the parties entered into a separation agreement for the *sole* purpose of a dissolution of marriage may be determined by express language in the agreement providing that the separation agreement would only be binding if a dissolution of marriage is obtained. In such a case, if a petition for dissolution is dismissed under R. C. 3105.65 (A), the agreement never becomes a valid and binding contract. An intent to make a separation agreement valid and binding only upon the granting of a dissolution may also be evidenced if the agreement is silent as to its duration and no action is taken by the parties under the terms of the agreement.

This raises the question of whether all separation agreements entered into in contemplation of a dissolution of marriage can ever be effective if the dissolution petition is dismissed. Stated another way, may a separation agreement ever survive a dismissal of a dissolution petition under R. C. 3105.65 (A)? The answer to this question is in the affirmative.

Parties may by express language in the agreement provide that the separation agreement will survive a dismissal of the dissolution of marriage petition. They may provide that the agreement will be binding in the event either a dissolution petition, divorce complaint, or alimony only action is filed, and in the event the dissolution petition is dismissed, the separation agreement will still be valid and binding, or such similar language. This would be considered a savings clause that would preserve the validity of the separation agreement. Where such express language is contained in the separation agreement, it will be honored as under general contract law, and the agreement will be considered valid and binding. This language evidences the intent of the parties that the separation agreement shall be valid and binding and that it will sur-

vive a dismissal of a dissolution petition. It is noted that the language of R. C. 3105.65 (A) does not preclude such a result.

In addition, if the separation agreement does not contain a savings clause, or express language that the agreement will only be valid if a dissolution is granted, but the parties' actions indicate an intention to continue to be bound by the terms of the separation agreement, the agreement will be valid and binding even though a dissolution petition is dismissed.

In summary, a separation agreement is generally considered to be a valid and binding contract between the parties thereto until declared invalid or incorporated by reference into a divorce decree. However, where a separation agreement is entered into solely for the purpose of dissolution of the marriage, and the court dismisses the dissolution petition pursuant to R. C. 3105.65 (A), the proposed separation agreement will never become a validated contract. A separation agreement will survive the dismissal of a dissolution petition, however, if it contains express savings language or is silent as to the agreement's duration, but the parties' conduct evidences their intention to continue to be bound by the agreement.

Under the facts in the present case, the separation agreement contains no express savings clause, and no express language limiting the agreement's validity to the granting of a dissolution, but the conduct of the parties was such as to evidence an intention to be permanently bound by the terms of the separation agreement. Many of the terms of the separation agreement were completed by the parties upon its execution. The only remaining items to be performed were the payment of the $250 bill to J. C. Penney, future payments of insurance premiums, future mortgage payments, transfer of the quit-claim deed of the house from the appellant to the appellee, and each party's payment of its respective attorney's fees.

Therefore, it is our holding that the separation agreement entered into by and between the Greiners was intended by the parties to be valid and binding despite the dismissal of the dissolution action. Thus, the separation agreement survived the dismissal of the dissolution action.

Next, we will review the validity of the trial court's order. Appellant contends that the order is invalid because the court did not expressly rule on all of the issues raised in the complaint. This is based on appellant's assumption that the separation agreement is invalid. In other words, the appellant is arguing that, since the separation agreement is invalid, its terms and conditions are not binding on the parties, and therefore, the court had no authority to incorporate it by reference and was required to rule on all of the issues raised in the complaint.

First, the appellant's contention that the trial court did incorporate the separation agreement into the judgment entry is not accurate.

When parties enter into a separation agreement and submit the agreement to the court at the time of trial in a divorce or alimony only action, the trial court has one of several options.

The first is that it can find the separation agreement fair, just, and reasonable or equitable, and incorporate it by reference so that it becomes part of the decree. *Wolfe* v. *Wolfe, supra.* The court's second option is to reject some of the terms of the separation agreement, make an independent ruling on those issues, and incorporate the independent rulings and partial separation agreement into the decree. *See Tullis* v. *Tullis, supra,* at 194. The third alternative is for the trial court to reject the entire separation agreement and make its own findings regarding the issues set forth in the complaint. Lastly, the trial court may acknowledge the existence of a separation agreement, identify it and attach it to the decree, without incorporating it by reference. Under these circumstances, the trial court has not repudiated or rejected the separation agreement, nor has it found the agreement fair, just, and equitable and incorporated it into the decree. It has merely acknowledged the separation agreement and attached it as an exhibit.

In the present case, the trial court neither incorporated the separation agreement into the divorce decree nor declared the separation agreement invalid. It merely acknowledged the separation agreement's existence and attached it as an exhibit. Under these circumstances, the

separation agreement is considered a valid and binding contract and will be enforced the same as any other contract. *Wierwille* v. *Wierwille, supra; Danner* v. *Danner* (1950), 57 Ohio Law Abs. 30.

There is a distinction in the treatment of the terms of a separation agreement when it is incorporated by reference into the decree and when it is merely attached as an exhibit. Under both circumstances, the terms of the separation agreement are considered valid and binding. But, in the first instance when the agreement is incorporated into the decree, the separation agreement loses its vitality as a contract and is enforceable as part of the divorce decree. *Wolfe* v. *Wolfe, supra.* On the other hand, if the separation agreement is not incorporated by reference or declared invalid, but is merely identified and acknowledged and attached as an exhibit, it is considered a valid and binding contract between the parties. *Wierwille* v. *Wierwille, supra; Danner* v. *Danner, supra.* Under these circumstances, the separation agreement will be enforced as a contract rather than as part of the decree. *Mozden* v. *Mozden, supra.*

In cases where a separation agreement is submitted to the court in a divorce action, the better practice would be for the trial court to incorporate the separation agreement into the divorce decree rather than acknowledge it and attach it as an exhibit, because once it is incorporated by reference, its terms will be enforced as part of the decree, such as in a contempt of court action, rather than in a breach of contract action. *See Mozden* v. *Mozden, supra.* Incorporation by reference results in judicial efficiency and economy.

We presume that the trial court was aware of its authority in acting as it did and intended that the separation agreement containing the issues resolved between the parties be enforced under contract law rather than as part of the divorce decree as the result of an incorporation by reference.

It is our holding that the separation agreement was a valid and binding contract, and, inasmuch as it was not incorporated by reference in the decree, nor declared invalid, it remains a valid and binding contract and will be enforced as such. The divorce decree granted by the trial court is valid. The trial court did not commit error, either as a matter of law

or as an abuse of discretion, in not including the issues of alimony and division of property in its decree.

*Judgment affirmed.*

PARRINO, P. J., and STILLMAN, J., concur.