## Charlton v. Charlton
*[Cite as 8 AOA 617]*

Case No. 89-L-14-173
*Lake County, (11th)*
*Decided December 18, 1990*

*Howard W. Bernstein and Patrick T. Murphy, 153 East Erie Street, Painesville, Ohio 44077, for Plaintiff-Appellant.*

*William K. McCarter, 4139 Erie Street, Willoughby, Ohio 44094, for Defendant-Appellee.*

MAHONEY, J.

On September 18 and September 21, 1989, appellant, Sharon Charlton, and appellee, William Charlton, executed a separation agreement. The agreement provided, *inter alia:*

"***

"II. *DIVISION OF PROPERTY:*

"***

"(B) Real Estate:

"***

"(2) The parties agree that there is substantial equity in the martial (*sic*) home. The husband, in consideration of the waiver of child support and the waiver of his child support arrearages, does give, transfer and convey to wife all his right, title and interest in and to the marital home contemporaneously with the signing of this Agreement.

"***

"III. *CHILD SUPPORT*

"The husband is presently unemployed and was previously receiving Workers' Compensation Benefits, which benefits have presently been suspended. The parties agree that if the husband were employed on a full-time basis or receiving full-time Workers' Compensation Benefits his weekly support payments would be Fifty Dollars ($50.00) per week. The parties have further determined, for the purpose of husband's child support obligation, that husband's equity in the marital home would equal at least the total amount of child support payable over the next four (4) years. Pursuant to Paragraph II(B)(2) and as advance payment of child support and subject to further order of Court, the husband does transfer to the wife all his right, title and interest in and to the marital home.

"Wife agrees to be responsible for all the medical and hospitalization insurance of the minor child. Any medical bills not covered by the wife's hospitalization insurance shall be split equally between the parties.

"The parties further agree that by the transfer of the marital home to wife, all arrearages for child support have been paid in full.

"***"

The evidence indicates that at the time the separation agreement was executed, William Charlton had been unemployed for a period of two years and had not been making support payments. The parties had one emancipated daughter and a daughter fourteen years old at the time of the agreement. If appellee were to pay $50 per week to support that daughter until she reached the age of majority, the total amount of support paid would be $9,600. The evidence further indicated that appellee's share of equity in the

marital home was approximately $10,000. Pursuant to the agreement, appellee decided to convey his interest in the marital home to appellant in exchange for relief from having to pay child support.

On October 30, 1989, appellant proceeded on an uncontested divorce. Appellant and her counsel attended the proceedings, but appellee did not as he had already moved out of state. The signed separation agreement was presented to the trial court at the October 30, 1989 hearing.

By judgment entry dated December 22, 1989, the trial court granted appellant a divorce and awarded her custody of the minor child. Regarding the separation agreement, the trial court stated:

"The Court further finds that the Defendant husband and the Plaintiff wife voluntarily entered into and executed a certain Separation Agreement dated September 15, (sic) 1989, and September 21, 1989, respectively, and this Court, after proper examination and full consideration thereof, finds it fair, just and equitable, but only partially. Now and by reason thereof, said Agreement is partly approved and made a partial Order of this Court."

The trial court altered the separation agreement as it had been submitted by deleting the paragraph wherein appellant waived her right to child support in exchange for transfer of appellee's right, title and interest in and to the marital home. The trial court found, in part:

"*** that a transfer of the home equity to the mother does not pre-pay child support, or obviate the need for an ongoing order of child support. Children cannot eat the marital domicile. Therefore, the father is ordered to pay at a minimum of $12.50 per week, per child, plus poundage through the Lake County Child Support Enforcement Agency, as ongoing support while unemployed. Fifty percent (50%) of any support paid while the child is under age 18 shall be deemed an interest the father has in the marital domicile so long as the domicile remains in the mother's possession."

The trial court, in its judgment entry of divorce, also stated:

"The Court finds that the wife was the sole support of the children by working and the husband did not work even though capable for a two year period, and therefore the wife is entitled to be reimbursed for the amount of support she furnished the children which should have been provided by the father.

*"The Court finds this amounts to an equitable arrearage for child support."* (Emphasis added.)

From the trial court's judgment entry, appellant timely filed a notice of appeal with a single assignment of error:

"The trial court abused its discretion and erred to prejudice of plaintiff in denying the agreed child support provisions and unnecessarily entangling the rights and affairs of the parties."

In the sole assignment of error, appellant raises two separate issues which will be addressed individually. Before these issues are discussed, it should be noted that appellee's appellate brief fully and completely supports appellant's position in this matter. Both sides seek a reversal of the trial court's decision and its replacement with the original separation agreement executed by the parties.

The first issue raised by appellant concerns the trial court's finding that an equitable arrearage existed with respect to appellee's failure to pay support for the preceding two-year period. The trial court, however, failed to indicate the amount of the arrearage. This oversight by the trial court has left appellant unable to collect whatever arrearage is owed her. Appellant's argument regarding the issue of the equitable arrearage is well taken.

The second issue raised is concerned with the trial court's modification of the separation agreement. Appellant asserts that the trial court erred in not permitting appellee to essentially prepay his child support by transferring his interest in the marital home to appellant. Appellant claims that this court has upheld the validity of the same kind of transfer previously in *Gelermino v. Gelermino* (May 9, 1977), Lake App. No. 6-091, unreported. There, this court affirmed the trial court's judgment which stated, in pertinent part:

"It is further ordered, adjudged and decreed, subject to further order of this Court, that the defendant quit-claim his interest in and to the marital domicile (which was determined to be 45% by prior order of this Court) to the plaintiff, in lieu of any and all child support payment obligations, except that the defendant shall be responsible for the neces-

sary medical, dental and optical expenses of his minor children until they become married, emancipated or die, respectively."

This court stated:

"*** In the case *sub judice* the Court awarded to the wife the husband's interest in the home as a prepayment of child support obligations. It is inconceivable that the wife could be prejudiced by having the child support fully prepaid. She is free to sell or encumber the property if immediate cash is needed. Also, she is not foreclosed from filing a Motion for additional support if the circumstances warrant an order for an increase in support.

"The wife has an income of approximately $11,000.00 per year with which to assist in supporting the children and to provide funds for daily living expenses. Under these circumstances, we believe the recommendation of Mr. Osborne, Referee, which was adopted by Judge Avellone was in the best interest of the plaintiff-appellant and was not an abuse of discretion." It is clear, therefore, that a trial court has the authority to uphold this type of agreement.

While a trial court has no authority or power to amend or modify a separation agreement without the parties' consent in a dissolution proceeding, (see *In the Matter of Dissolution of Black* (Feb. 13, 1981), Fulton App. No. F-80-7, unreported), that is not the case in a divorce action. Ohio courts have held that in a divorce action, the trial court has discretionary authority to modify the parties' agreement. *Tullis v. Tullis* (1941), 138 Ohio St. 187, 194; *Greiner v. Greiner* (1979), 61 Ohio App. 2d 88, 99; *Bourque v. Bourque* (1986), 34 Ohio App. 3d 284, 287.

In the instant cause, the matter proceeded through the trial court as an uncontested divorce rather than a dissolution because appellee was not present at the final hearing. Therefore, the trial court had the discretion to modify the parties' separation agreement.

However, it is the better practice to permit and even encourage a couple to create their own separation agreement since they are in a better position to know what is best suited to their own needs. Therefore, the proper procedure for a trial court, if it decides not to adopt the parties' agreement, is to hold a hearing so that the parties can explain their positions. The court will then be able to convey its misgivings directly to the parties so that they are afforded an opportunity to alter or amend the agreement to the satisfaction of each other and the court.

For the foregoing reasons, appellant's argument regarding the court's modification of the separation agreement is well taken. Appellant's sole assignment of error has merit.

The trial court's decision is reversed and the cause remanded for a hearing on the validity of the separation agreement in addition to a determination of the amount of the equitable arrearage.

CHRISTLEY, P.J., concurs with concurring opinion.

FORD, J., dissents with dissenting opinion.

FORD, J., dissenting.

While I concur with the majority opinion regarding the separation agreement, I must respectfully dissent with the court's remand as to the equitable arrearage as addressed by the majority in the first issue of the assignment of error.

In Ohio, both statutory law and common law, as well as public policy, recognize that:

"The natural duty of the parents to provide their children with suitable shelter, food, and clothing until they are able to support themselves ***.

"***

"A father's obligation to support his children is considered to be a duty owed to the state as well as to his minor children, since, if the father fails to fulfill his obligation there is a distinct possibility that the state will have to assume that obligation and that the children will be supported at public expense." 47 Ohio Jurisprudence 3d (1983), 67-69, Family Law, Section 608.

The parents' duty of providing their children's maintenance is imposed by the criminal code; also, under the Public Welfare Law, a father or mother may be held liable for the support of a minor child under 18 years old while such child is in an institution. 47 Ohio Jurisprudence 3d (1983), 68, Family Law, Section 608.

However, in order for express civil liability to obtain, it generally must be predicated upon the establishment of a decree or judgment against the parent in question. The general duty to support may indeed provide a

basis for a criminal action against such an errant parent, but this same duty, to this writer's knowledge, is not a proper source for an "equitable arrearage" sans the existence of a specific support order. An interlude of actual nonsupport does not substitute for such an order.

Therefore, absent a judgment, as in the instant case, a trial court cannot award a judgment for an "arrearage" of child support payments. *In re the Marriage of Drenser* (Dec. 13, 1985), Lake App. No. 10-223, unreported. See, also, *State v. Jirles* (July 28, 1989), Guernsey App. No. 89-CA-06, unreported; *Moppin v. Moppin* (Dec. 7, 1987), Clermont App. No. CA 87-05-044, unreported.

In other words, since appellant was not under a court order to pay child support payments during the time period at issue, the trial court abused its discretion in finding that an enforceable "equitable arrearage" existed.

CHRISTLEY, P.J., concurring.

I concur in judgment only as I agree that a hearing is needed. It is the *purpose* of the hearing about which I disagree. The hearing should be an opportunity for the appellant and appellee to give testimony and evidence as to the effect on the needs of the minor of the exchange of equity for future support. The hearing could also provide a forum to determine the amount of the equitable arrearages.

Having heard *evidence,* the judge can then properly determine if that portion of the separation agreement needs to be replaced by a court order or not.