DECISION.
Please note: We have sua sponte removed this case from the accelerated calendar.
The domestic relations court entered a decree dissolving the marriage of appellee Shirley Hoog Davis and Maurice Hoog in 1992.[1] Incorporated into the dissolution decree was a separation agreement drafted by Hoog's attorney and signed by both Davis and Hoog. The separation agreement divided the parties' property and included a paragraph captioned "Bank Accounts-Not Jointly Held," which stated that any savings and checking account held individually was the sole property of the individual. It excepted from that statement three certificates of deposit, a pass-book savings account, unidentified "mutual funds" totaling "approximately $26,000.00," and 32 shares of Procter Gamble stock, which were given to Davis. (According to Davis and Hoog's attorney, who drafted the agreement, Hoog provided the valuation for the mutual funds. Davis did not ask for verification of the $26,000 value.)
The separation agreement also contained a provision captioned "Pensions; Marital Property," which stated that each party released and waived any claim to any "vested pension rights or plans" that were "titled in the name of the other person or held for his or her benefit," and that each party had full title to or beneficial interest in his or her plan free from any claim of the other.
In 1996, Hoog died, and his son, Thomas Hoog, became the executor of his estate. Soon after Hoog's death, Davis received a telephone call from her daughter-in-law asking if she were aware of a Florida individual retirement account (the Keystone account). The Keystone account had been established by Hoog in 1987, and it designated Davis as the primary beneficiary and Thomas Hoog as the contingent beneficiary. Initially, Davis thought that the Keystone account was a hidden asset because of it being referred to as a Florida account. After investigating, however, Davis realized that the Keystone account represented the "mutual funds" referred to in the separation agreement. She had the funds distributed to her and placed them in a savings account pending the outcome of her motion requesting that the trial court transfer the asset to her.
The issue before the magistrate was whether the term "mutual funds" as used in the separation agreement referred to the Keystone account. After an evidentiary hearing, the magistrate determined that the separation agreement was ambiguous and interpreted the term "mutual funds" in the separation agreement to mean the Keystone account. Although the magistrate determined that Davis's motion for transfer of the account was moot because she already had the funds, he concluded that, as between Davis and Hoog's estate, Davis was entitled to the Keystone account by the terms of the separation agreement. The trial court adopted this decision after conducting a hearing on objections to the magistrate's findings of fact and conclusion of law.
Thomas Hoog, as executor of Hoog's estate, appeals the decision adopted by the trial court and raises four assignments of error, all of which are in some way related to his misperception that the trial court's decision was a modification of the separation agreement and not the enforcement of the dissolution decree. He claims that the trial court abused its discretion by (1) finding that the separation agreement was ambiguous and relying upon the ambiguity to modify the agreement without the consent of the parties; (2) not applying the doctrine of laches; and (3) not applying judicial estoppel to preclude Davis from asserting that the term "mutual funds" was meant to refer to the Keystone account. He also contends that the trial court lacked jurisdiction to render a judgment.
The record reveals the following facts. In 1987, Hoog cashed in a Flexible Premium Annuity issued by General Life Insurance Corporation of Wisconsin and rolled over the proceeds into a Keystone Individual Retirement Account. The sum of $14,202.65 was paid to Keystone Investor Resource Center and used to purchase shares in Keystone Series S-3 Mid-Cap Growth Fund. The financial advisor for the Keystone account was Mutual Service Corporation. While statements to Hoog initially used a Cincinnati, Ohio, address, they later indicated a West Palm Beach, Florida, address.
In the year of the dissolution, Davis and Hoog discussed whether to transfer the Keystone account to Davis and decided that they would wait to do so until the following year. Davis feared the tax consequences of the transfer and did not know that she could roll over the account into her own name. That same year, Davis sought a loan in order to build a new home. She told Hoog that she wanted to list all her assets, and he provided the account number for the Keystone account. Hoog had the account number because the statements were still being mailed to his business address. On the information she provided to the lending institution, Davis listed the Keystone account as "Mutual Fund-Keystone," provided the account number, and indicated its value as $26,000, as provided in the separation agreement. The following year, Davis failed to have the Keystone account transferred because she was overwhelmed with moving into a new house, running her own business, and handling her own finances. She testified that she also had a series of medical problems to handle, including uncontrolled high blood pressure, negative reactions to medication, abdominal surgery, and an ill daughter. She subsequently forgot about the account.
Thomas Hoog's first assignment contends that the separation agreement is unambiguous. Consequently, he argues that the trial court did not interpret an ambiguous contract, but instead modified the separation agreement. We disagree with his assertion. Further, our disposition of this assignment also takes care of his challenge to the trial court's jurisdiction as stated in his fourth assignment.
When a separation agreement is ratified and adopted by the trial court, it is "superceded by the decree and its terms are imposed, not by contract, but by decree."[2] Consequently, "[w]hile a trial court does not have the power to modify the terms of a separation agreement entered into between the parties, R.C.3105.65(B) provides that it does have full power to enforce the provisions of such an agreement as it has been incorporated into the decree of dissolution of marriage. Where there is confusion over the interpretation to be given a particular clause, the trial court in enforcing the agreement has the power to hear the matter, clarify the confusion, and resolve the dispute.[3] That is the situation presented in this case.
A separation agreement is a contract to which the rules of construction are applicable.[4] The determination of whether an agreement is ambiguous is a question of law and is reviewed denovo.[5] Once a term or clause is determined to be ambiguous or subject to more than one interpretation, "the meaning of the words used is a factual question, and we review the trial court's clarifying order under an abuse of discretion standard."[6]
"In defining ambiguity, the Supreme Court of Ohio has stated that, `common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument.'"[7] The meaning of terms that are undefined, uncertain or ambiguous, and reasonably subject to more than one interpretation can be explained by parol evidence.[8] In clarifying the language of a separation agreement, the trial court may consider "not only the intent of the parties but the equities involved."[9]
The separation agreement, as incorporated in the dissolution decree, lists "Mutual Funds approx. $26.000.00" under a heading designated for individually held bank accounts. The mutual funds are not specifically identified by name or by account number and are listed in a section that supposedly concerns bank accounts. Having reviewed the separation agreement in its entirety, we conclude that the term "mutual funds" is ambiguous.
Thomas Hoog argues that the separation agreement is unambiguous because the Keystone account is clearly included in the section of the agreement concerning pensions. That paragraph refers to "vested pension rights or plans." A vested pension plan refers to an employee's right to receive payment in the future, subject to the contingencies placed on the right and his living until the age of retirement. An individual retirement account, in contrast, is easily attainable before retirement, albeit with tax consequences for early withdrawal, and its owner cannot be divested of rights to use and possession. Because the section upon which Thomas Hoog relies only refers to "vested pension rights and plans," we conclude that it does not clearly include individual retirement accounts.
Having concluded as a matter of law that the separation agreement is ambiguous, we must next determine whether the trial court abused its discretion by concluding that the Keystone account represented "mutual funds" and not a "vested pension right or plan." According to the undisputed evidence, the Keystone account resulted from Hoog cashing in an annuity issued by General Life Insurance Company of Wisconsin and rolling it over into a Keystone individual retirement account. The money was used to purchase shares of the Mid-Cap Growth Fund (S-3). Davis testified that she and Hoog referred to the Keystone account in their discussions as mutual funds, and that the couple had no other mutual funds before or at the time they entered the separation agreement. The value of the account was provided by Hoog, and was not verified by Davis. Hoog did not remove Davis as the account's primary beneficiary. (Although the point is not raised in this appeal, we note that because the Keystone account was established prior to May 31, 1990, R.C. 1339.63, which concerns the revocation of an ex-spouse's standing as a beneficiary, has no effect on this case.[10]) In fact, when Davis was applying for financing to build a home, she identified the Keystone account as a mutual fund to her lending institution, and when she told Hoog that she wanted to list all her assets, he provided the account number to her.
The attorney who prepared the agreement testified that a mutual fund was not the same thing as an individual retirement account. He had no independent recollection, however, of what the term "mutual funds," as used in the separation agreement, was intended to mean. Hoog provided the information contained in the agreement to the attorney. Davis understood that the section concerning pension plans referred to any future pension plans that might have been established if either party became other than self-employed.
Based upon the evidence before it, the trial court concluded that Davis and Hoog intended that the term "mutual funds" refer to the Keystone account. We conclude that the trial court did not abuse its discretion in interpreting the separation agreement in that manner. In fact, the trial court's finding strikes us as the only reasonable interpretation of the facts. The first assignment is overruled.
Further, the record clearly demonstrates that the trial court did not modify the agreement, but merely clarified its meaning. This was clearly within its power.[11] Further, we do not believe that the death of one of the parties prohibited the court from enforcing its decree. We overrule the fourth assignment.
Thomas Hoog next argues that, because Davis waited five and one-half years to assert her claim to the Keystone account, the trial court erred by not barring her claim under the doctrine of laches. Assuming that consideration of the equitable doctrine of laches may have been appropriate in this case, we conclude that the trial court did not err by refusing to apply the doctrine against Davis. Laches has been defined as an equitable defense that requires proof of an unreasonable and unexplained delay in asserting a right; absence of an excuse for the delay; actual or constructive knowledge of the injury or wrong (knowledge of the cause of action); and material prejudice to the adverse party.[12] Prejudice cannot be inferred merely from delay in asserting the right.[13] "Generally, the types of prejudice that will support the application of laches are (a) the loss of evidence helpful to the defendant's case, or (b) a change in the defendant's position that would not have occurred had the plaintiff not delayed in asserting his rights."[14] What constitutes laches remains in the sound discretion of the trial court because "no universal rules can be formulated, but the question is predominantly one of fact, to be resolved in each case according to its special circumstances."[15]
Under the facts of this case, where Davis explained the failure to provide for a prompt transfer of the Keystone account to her; where she had no reason to know of any "wrong" or "injury" regarding the account until Hoog died in 1996; and where the estate merely speculated that if Hoog were alive he might have advanced its interpretation of the separation agreement, we cannot say, without more, that the trial court abused its discretion in not applying the doctrine of laches. The second assignment is overruled.
In the third assignment, Thomas Hoog claims that the trial court erred by failing to apply judicial estoppel. As we have explained, "The doctrine of judicial estoppel applies to a party who has successfully and unequivocally asserted a position in a prior proceeding; he is estopped from asserting an inconsistent position in a subsequent proceeding."[16] The doctrine has no application to the facts and procedural posture of this case. The third assignment is overruled. Therefore, the judgment of the trial court is affirmed.
Judgment affirmed.
 Hildebrandt, P.J., and Gorman, J., concur.
Please Note:
The court has placed of record its own entry in this case on the date of the release of this Decision.
[1] Although the caption lists appellee as Shirley Hoog, the record indicates that she is now known as Shirley Hoog Davis. Thus, we refer to her as Davis for the sake of clarity.
[2] Greiner v. Greiner (1979), 61 Ohio App.2d 88, 95,399 N.E.2d 571, 576.
[3] In re Dissolution of Marriage of Seders (1987), 42 Ohio App.3d 155,156-157, 536 N.E.2d 1190, 1192.
[4] See Bloch v. Bloch (Mar. 20, 1991), Hamilton App. No. C-890685, unreported.
[5] See Bd. of Cty. Commrs. of Hamilton Cty. v. Flanco RealtyCo. (June 25, 1999), Hamilton App. No. C-980781, unreported.
[6] Mattice v. Mattice (Dec. 18, 1998), Montgomery App. No. 17157, unreported; see Bloch v. Bloch, supra.
[7] Bd. of Cty. Commrs. of Hamilton Cty. v. Flanco Realty Co.,supra, quoting Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241,374 N.E.2d 146, paragraph two of the syllabus.
[8] See Bd. of Cty. Commrs. of Hamilton Cty. v. Flanco RealtyCo., supra.
[9] Bloch v. Bloch, supra.
[10] See Aetna Life Ins. Co. v. Schilling (1993), 67 Ohio St.3d 164,616 N.E.2d 893.
[11] R.C. 3105.65(B).
[12] See Safdi v. Gallegos (July 16, 1999), Hamilton App. No. C-980814, unreported, citing State ex rel. Polo v. Cuyahoga Bd. ofElections (1995), 74 Ohio St.3d 143, 145, 656 N.E.2d 1277, 1279.
[13] State ex rel. Chavis v. Sycamore City School Dist. Bd. ofEdn. (1994), 71 Ohio St.3d 26, 35, 641 N.E.2d 188, 196.
[14] Safdi v. Gallegos, supra.
[15] Bitonte v. Tiffin Savings Bank (1989), 65 Ohio App.3d 734,739, 585 N.E.2d 460, 463.
[16] Guidoumbouzianii v. Johnson (Mar. 26, 1997), Hamilton App. No. C-960597, unreported, quoting Edwards v. Aetna Life Ins. Co.
(1982), 690 F.2d 595, 598.